MID CENTURY INSURANCE COMPANY, APPELLANT AND CROSS-APPELLEE, V. CITY OF OMAHA, NEBRASKA, APPELLEE AND CROSS-APPELLANT.

494 N.W.2d 320

Filed December 31, 1992.    No. S-90-007.

Daniel P. Chesire and Raymond E. Walden, of Kennedy, Holland, DeLacy & Svoboda, for appellant.

Herbert M. Fitle, Omaha City Attorney, James E. Fellows, Thomas O. Mumgaard, and Jo A. Cavel for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

The plaintiff, Mid Century Insurance Co. (MCIC), brought this action against the City of Omaha under the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. § 13-901 et seq. (Reissue 1991). The action arose out of the deaths of two teenage youths who were involved in an accident on May 20, 1986, at 72d and Maple Streets in Omaha. The car in which they were riding was struck by an automobile being driven at an excessive speed by Lee Williams, whose 1974 Buick Century was not covered by liability insurance. The plaintiff afforded uninsured motorist coverage to the automobile being driven by the youths, and as a consequence, it paid $100,000 to the estates of each of the two youths. As a basis for its claim, MCIC alleged that the proximate cause of the accident that resulted in the deaths was the negligence of the City of Omaha as imputed to it by the actions of its police officers in negligently pursuing Williams, in failing to warn the motoring public with the use of flashing lights and sirens, and in attempting to apprehend Williams, who was attempting to elude the police by driving at excessive rates of speed and violating a red traffic signal at the location of the accident.

The theory upon which the case was tried to the court was that the accident was proximately caused by law enforcement officers during vehicular pursuit as set forth in § 13-911. Section 13-911 provides as follows:

In case of death, injury, or property damage to any innocent third party *proximately caused* by the action of a law enforcement officer employed by a political subdivision during vehicular pursuit, damages shall be

paid to such third party by the political subdivision employing the officer. This section shall be considered part of the Political Subdivisions Tort Claims Act and the provisions of sections 13-901 to 13-926 shall apply.

For purposes of this section, vehicular pursuit shall mean an active attempt by a law enforcement officer operating a motor vehicle to apprehend one or more occupants of another motor vehicle, when the driver of the fleeing vehicle is or should be aware of such attempt and is resisting apprehension by maintaining or increasing his or her speed, ignoring the officer, or attempting to elude the officer while driving at speeds in excess of those reasonable and proper under the conditions.

(Emphasis supplied.)

The trial court in its order and judgment of dismissal of the claim found that Officer Joseph Vaccaro was not in vehicular pursuit, that Officer Michael McGowen was in vehicular pursuit, that the deaths of the youths were not proximately caused by the actions of McGowen, and that any negligence on the part of McGowen in failing to activate his siren was not the proximate cause of the accident, but that the sole proximate cause was the conduct of Williams.

MCIC assigns as error the findings of the trial court as to the absence of proximate cause attributed to pursuit by McGowen and the related finding that Williams' reckless driving was not occasioned by any conduct of McGowen relating to the pursuit. In effect, the claim of error may be distilled to one: the finding that the pursuit by McGowen was not a proximate cause of the accident. We affirm.

A district court's factual findings in a case brought under the Political Subdivisions Tort Claims Act will not be set aside unless such findings are clearly incorrect. *Kumar v. Douglas County*, 234 Neb. 511, 452 N.W.2d 21 (1990); *Ohnstad v. Omaha Public Sch. Dist. No. 1*, 232 Neb. 788, 442 N.W.2d 859 (1989).

In a review of a bench trial under the Political Subdivisions Tort Claims Act, an appellate court must consider the evidence in the light most favorable to the successful party, resolving any conflicts in the evidence in favor of that party and giving to that

party the benefit of all reasonable inferences that can be deduced from the evidence. *Gatewood v. City of Bellevue*, 232 Neb. 525, 441 N.W.2d 585 (1989).

The evidence, viewed most favorably to the city, shows that on the evening of May 20, 1986, Williams drove his 1974 Buick Century to the Office West lounge at 108th and Cottonwood in Omaha to see his girl friend. He said that he was there for 1½ to 2 hours and was drinking. He got into an argument with his girl friend and the manager of the lounge, and apparently he got into a fight with the lounge's owner.

Eventually, a disturbance occurred which resulted in the police being called. Vaccaro testified that he was called to the lounge, but when he arrived he failed to see any sort of disturbance. He was told by the owner of the lounge, a Mr. Kolzewski, that everything was under control and that the officer could leave. He did leave and went to the 108th and Maple intersection where the Albertson's parking lot was located. He was joined there by Officer David Marion.

A few minutes later, the officers received a call about a disturbance at the Office West lounge. When they arrived in response to that call, Kolzewski, who had blood on his face and chest, told Vaccaro to stop the Buick which had just left the parking lot. Vaccaro testified that the Buick pulled out in a normal fashion and that he did not think Williams was exceeding the speed limit at that time. Vaccaro followed Williams and saw him pull into an Amoco station at 102d and Maple. Vaccaro stated that he did not flash the cruiser's lights to indicate that he was trying to catch up with the Buick. However, Williams stated that when the cruiser behind him turned on its lights, he thought that it meant for him to pull over, so he pulled into the Amoco station. Obviously, a disputed factual issue exists.

Vaccaro went up to Williams and obtained his driver's license. Vaccaro told Williams to have a seat in the cruiser. Williams was cooperative. Vaccaro then checked the identity of Williams with the radio dispatcher and found that Williams had no outstanding warrants, but he did have a criminal record and was to be considered dangerous. At this time, Vaccaro noted that a cruiser driven by McGowen was in the vicinity of the

station.

Vaccaro was then advised by the dispatcher that there had been an assault and a hit and run accident at 108th and Cottonwood and that he should bring Williams back there. Williams heard this broadcast and said, "Fuck it, I'm leaving." Williams got into his car; Vaccaro tried to reach in and take the keys away from Williams, but was unsuccessful. Williams got the car started moving forward, held onto Vaccaro's hand, and dragged him along for three or four steps, until Williams released him and Vaccaro fell to the ground. Vaccaro watched to see which way Williams was going, then went back to his cruiser and advised over his radio that the party had gotten away and was eastbound on Maple Street from 102d with no lights on. Vaccaro still had Williams' driver's license, but thought if they could locate Williams, they could clear up the incident that evening rather than have to go through the steps to get an arrest warrant the next day.

Vaccaro testified that his intent was to locate Williams, but he saw no point in actual pursuit because he had no idea as to Williams' location. Vaccaro stated that Williams was accelerating as he left the lot, and when the officer last saw Williams, he was going 40 or 45 miles per hour.

McGowen testified that he was working the midnight shift on May 20, 1986. He stated that he knew about the alleged assault at 108th and Cottonwood and that when the second call came out, he started in that direction to back up the officers there. While he was at 102d Street, he received another call which dispatched him to 78th and Dodge, and he left the area. As McGowen reached the area of 78th and Lake Streets, having heard Vaccaro's broadcast and thinking it referred to the 1974 Buick Century he had seen at the Amoco station, he thought Vaccaro needed help. Therefore, he asked the dispatcher to send someone else to 78th and Dodge, and he made a U-turn to go back to Maple Street. He then drove westbound on Maple, thinking he would be able to intercept Williams at 78th, 80th, or 84th.

While driving west on Maple, McGowen looked to the west and saw the headlights of two cars approaching. He observed that one automobile rapidly passed the other. At about 79th or

80th Street, he knew that the car in the inside lane was Williams' car because he could see Williams looking out the windshield with his face close to the windshield and dashboard. As soon as he saw Williams' face, he accelerated. He was then at a median break and made a turn at that point to try to clip the rear end of Williams' car, attempting to use the left front of his cruiser to strike the left rear of Williams' car so as to cause it to spin around. McGowen came within a couple of yards of Williams, but missed. He had completed the maneuver and turned his car around when he broadcast that Williams was eastbound, "[G]oing about 90 miles an hour just passed 78th Street . . . ." McGowen got his cruiser turned around, headed east, accelerated, and apparently did not have the Williams car in view until he crested the hill at 78th Street. From that location, he saw beams from headlights coming from the south going north on 78th and saw that the traffic light for eastbound traffic at Maple and 72d was red. McGowen stated that he had accelerated to about 65 miles per hour when he crested this hill, so that he could determine which direction Williams was going to travel. McGowen testified that when he reached the top of the hill, he determined that he could not get close enough for a pursuit. He stated that he took his foot off the accelerator, because at that point there was not any need for speed. He then witnessed a collision at the intersection of 72d and Maple between Williams' car and a Dodge Coronet in which the youths were riding. McGowen then broadcast the fact of the traffic accident and stopped and assisted at the scene.

Williams knew that Vaccaro had been ordered to bring him back to the scene of the alleged assault at 108th and Cottonwood. As to the ensuing "chase," in spite of his lack of memory as to many of the details, Williams testified that prior to the accident, "The last thing I recall is when the police was coming behind me" and the police "had his red lights on." Both Vaccaro and McGowen deny that they ever turned on their red lights, which issue presented a question of fact for the court.

We can find no legitimate disagreement with the finding of the trial court that Vaccaro was not engaged in a pursuit within the meaning of § 13-911. Vaccaro did not see Williams after the latter left the Amoco station. He knew that Williams had

headed east, but had no notion of whether Williams continued in that direction or turned off. Vaccaro never again had the "fleeing" auto in his view. Williams did not testify that he saw or was aware of being chased by Vaccaro. Williams knew that the officer had been ordered to return him to the scene of the assault and that he, Williams, had left his present location. However, there is nothing in those facts which would establish the fact of a pursuit contrary to the finding of the trial court.

The evidence of the involvement of McGowen in this matter, whom the trial court found to be in pursuit of Williams, was his knowledge gained from the radio broadcasts and his observation of Williams' car for the first time, proceeding toward him several blocks away at a speed of well over 75 or 80 miles per hour, estimated at 90 miles per hour as they crossed paths. There is nothing in the record to establish that McGowen's presence in the vicinity had anything at all to do with Williams' fantastic trip.

True, McGowen attempted to stop Williams by ramming him. However, there is no evidence that such action altered in the slightest the speed or direction of travel of Williams. Williams was out of sight of McGowen in a matter of seconds, and the accident occurred a matter of seconds after McGowen next spotted Williams and had given up any chase he might have intended to undertake.

Other than the fact that Williams knew he was in trouble for leaving the scene when he was wanted back at 108th and Cottonwood, he cannot be heard to say that he knew he would be pursued.

By the same token, by the time Williams could have been aware of McGowen's involvement in this episode, if in fact Williams was aware, he was already following a course of undiminished breakneck speed which would inevitably lead to the accident seconds later.

Paraphrasing the language of this court, speaking of negligence in *Union Pacific RR. Co. v. Kaiser Ag. Chem. Co.*, 229 Neb. 160, 174, 425 N.W.2d 872, 881 (1988), in order for a city to be liable for injuries under § 13-911, the first requirement is that the act of the police in pursuing a fleeing motorist be such that without it the injury would not have

occurred, " ' " 'commonly known as the "but for" rule,' " ' " and the second requirement is that the injury be the natural and probable result of that act and without an efficient intervening cause.

The question of proximate cause, in the face of conflicting evidence, is ordinarily one for the trier of fact. *Corbet, Inc. v. County of Pawnee*, 219 Neb. 622, 365 N.W.2d 437 (1985). A district court's factual findings in a case brought under the Political Subdivisions Tort Claims Act will not be set aside unless such findings are clearly wrong. *Kumar v. Douglas County*, 234 Neb. 511, 452 N.W.2d 21 (1990); *Ohnstad v. Omaha Public Sch. Dist. No. 1*, 232 Neb. 788, 442 N.W.2d 859 (1989).

Viewed by these standards, it cannot be said that the record discloses that the findings in this respect were clearly wrong.

The same rules apply and the same conclusion is appropriate as to plaintiff's claim that a proximate cause of the accident was the failure of McGowen to activate his red lights and his siren. An expert was called to testify as to how far, in his opinion, a siren could be heard under certain circumstances. However, in the time that was available and with the apparent justification for using the lights and siren, again it was a question of fact for the court as to whether such lack of action was a proximate cause of the accident.

The judgment of the district court is affirmed. We see no need to take up the cross-appeal of the City of Omaha denying that McGowen was in pursuit at the time of the collision within the meaning of § 13-911.

AFFIRMED.