TARA PEREZ AND KEVIN STOKES, APPELLANTS, v.
CITY OF OMAHA, A MUNICIPAL CORPORATION, APPELLEE.

731 N.W.2d 604

Filed April 24, 2007. No. A-05-460.

Jay L. Welch, Thomas M. Locher, and Matthew D. Hammes, of Locher, Cellilli, Pavelka & Dostal, L.L.C., for appellants.

Thomas O. Mumgaard, Deputy Omaha City Attorney, for appellee.

INBODY, Chief Judge, and IRWIN and SIEVERS, Judges.

SIEVERS, Judge.

Tara Perez and Kevin Stokes (Kevin) appeal from the decision of the district court for Douglas County which dismissed their claims for damages against the City of Omaha (the City). This lawsuit involves an automobile accident on November 30, 2000, between a vehicle driven by Dale Stokes (Dale) and a vehicle driven by Brenda Pasko. The issues were whether a police vehicular pursuit pursuant to Neb. Rev. Stat. § 13-911 (Reissue 1997) occurred and, if so, whether Dale, the driver of one of the vehicles involved, knew or should have known about any such pursuit and whether any such pursuit was the proximate cause of Perez' and Kevin's injuries, thus entitling them to recover under § 13-911. We affirm the trial court's finding that a pursuit as defined under § 13-911 did not occur, and thus, we affirm the dismissal of the action.

#### FACTUAL AND PROCEDURAL BACKGROUND

Perez and Kevin filed a "Petition at Law" on October 22, 2002. It was stipulated that Perez and Kevin satisfied the requirements of the Political Subdivisions Tort Claims Act. In the petition, Perez and Kevin alleged the following: Shortly after midnight on the morning of November 30, 2000, Perez and

Kevin were passengers in a motor vehicle driven by Dale, now deceased, who was Perez' brother and Kevin's nephew. In the vicinity of 24th Street and St. Mary's Avenue in Omaha, members of the Omaha Police Department began a vehicular pursuit of Dale's vehicle that continued south on 24th Street to Martha Street, west on Martha to 28th Street, and north on 28th Street to Leavenworth Street, where Dale's vehicle collided with another vehicle and various fixed objects. At all times during such vehicular pursuit, Dale should have been, and indeed was, aware of an active attempt by a law enforcement officer of the City operating a motor vehicle to apprehend one or more occupants of Dale's vehicle. Dale resisted apprehension by maintaining or increasing the speed of his vehicle, ignoring the officer, and attempting to elude the officer while driving at speeds in excess of those reasonable and proper under the conditions. The resulting collision caused the immediate death of Dale and injuries to Perez and Kevin.

Perez alleged that she was physically and emotionally incapable of leaving Dale's vehicle before the collision and that as a direct and proximate result of the collision, she suffered various injuries, including the traumatic amputation of her right arm that has and will produce a variety of damages over her lifetime.

Kevin alleged that being aware of the vehicular pursuit, he asked to vacate Dale's vehicle, but that Dale declined to bring his vehicle to a halt because of the vehicular pursuit that had started. So, believing that there was less risk of vacating Dale's vehicle early in the vehicular pursuit before it reached maximum speed, Kevin exited the vehicle. Kevin alleged that rather than risk the alleged usual result of a vehicular pursuit, such as grave injury or death, he elected to leave the moving vehicle and sustained injuries, including a fractured pelvis. The petition alleged that the City was liable to Perez and Kevin under § 13-911, the strict liability statute for injuries and damages to innocent third parties caused by police motor vehicle pursuits.

By the time of this trial, the parties had stipulated that Perez and Kevin were innocent third parties under the statute, but the City specifically denied that Perez' and Kevin's injuries were proximately caused by a vehicular pursuit. The City also alleged a number of affirmative defenses, which we need not detail.

A trial was held in early January 2005, limited to the issue of liability. Perez and Kevin's case was consolidated with a case also brought under § 13-911 by Pasko and Allie Kuhn for their injuries sustained when Dale's vehicle struck Pasko's vehicle. We have this same day decided the appeal brought by Pasko and Kuhn from the trial court's dismissal of their case, in a separate memorandum opinion in our case No. A-05-461.

In an order filed March 11, 2005, the trial court made the following findings, which we quote in considerable detail, given the applicable standard of review:

> 3. Under the [Political Subdivisions Tort Claims] Act, a vehicular pursuit is defined as "an active attempt by a law enforcement officer operating a motor vehicle to apprehend one or more occupants of another motor vehicle, when the driver of the fleeing vehicle is or should be aware of such attempt and is resisting apprehension by maintaining or increasing his or her speed, ignoring the officer, or attempting to elude the officer while driving at speeds in excess of those reasonable and proper under the conditions." Neb. Rev. Stat. § 13-911(5) (Reissue 1997). Thus, in order to prevail, [Perez and Kevin] must prove the following three elements: (1) that there was an active attempt by a law enforcement officer operating a motor vehicle to apprehend one or more occupants of another vehicle; (2) that the driver was or should have been aware of such attempt; and (3) that the driver was resisting apprehension by maintaining or increasing speed, ignoring the officer, or attempting to allude [sic] the officer while driving at speeds in excess of those reasonable and proper under the conditions.
>
> . . . .
>
> 5. Regarding the first factor under Section 13-911, the Court finds that [Perez and Kevin] have failed to prove that [the involved police officer] was making an active attempt to apprehend the occupants of Dale's truck. Evidence at trial indicated that [the officer] began following Dale's truck after observing the truck cut across the sidewalk and into a parking lot in what appeared to the officer to be an attempt to pass two cars. By the time [the officer] turned her cruiser around to follow Dale, his truck was approximately

5 blocks away, and was already turning westward onto Poppleton.

6. The Court finds [the officer's] testimony credible that at the beginning of the alleged pursuit she concluded that she could not catch up to the truck and was therefore following the truck in order to monitor its progress. The Court finds support for this finding in light of the fact that along the entire route, [the officer] maintained at least a three-block distance between herself and the truck. While it is undisputed that [the officer] activated her [cruiser's] overhead lights, the Court finds that the act of turning off the lights after only four seconds is inconsistent with a finding of an active attempt to apprehend.

7. Furthermore, [the officer] did not radio the police department to inform them that she was "in pursuit," as required by standard police operating procedure, and did not activate the cruiser's siren. Instead, she made a radio broadcast noting the location and movement of Dale's truck and stating that she was "attempting to catch up."

8. While [the officer] did drive at a speed sufficient to stay close to Dale, her speed was insufficient to decrease the distance between them even though her vehicle was capable of matching or exceeding the speed of the truck.

. . . .

10. Accordingly, the Court concludes that the distance maintained between [the officer's] cruiser and Dale's truck, the failure to close the distance between the two cars when [the officer's] cruiser was capable of performing such a maneuver, the activation of the cruiser's overhead lights for only four seconds, the failure to activate the siren and failure to radio in a "pursuit" demonstrates a lack of active attempt to apprehend as required by Section 13-911.

11. The Court also finds that [Perez and Kevin] have failed to prove that Dale was or should have been aware of the pursuing officer's attempt to apprehend the individual. Due to Dale's death resulting from the accident, the Court must look to evidence presented at trial to determine whether [Perez and Kevin] have satisfied this second factor.

12. As a preliminary matter, the Court finds that Dale's assertion made before the truck reached 24th Street that police were behind him was factually inaccurate and erroneously based upon seeing [a] Corrections Center employee . . . behind him. The Court further finds that there were no police officers following or pursuing Dale's truck before the truck reached 24th Street.

13. In between leaving the parking lot on 24th Street and the collision at 28th and St. Mary's, Perez testified that Dale never mentioned that police were following him and failed to indicate any awareness of or concern about any headlights or police cruiser that he might have been able to see behind him. Instead, Dale told Perez to relax, and that he was going to get her home. Based upon the evidence submitted at trial, the Court concludes that Dale did not see [the officer] or her [cruiser's] mounted lights behind him.

14. In addition, and as noted above, [the officer] maintained several blocks distance from Dale at all times. At night, when the events in question occurred, it is reasonable to conclude that [the officer's] cruiser looked like any other vehicle on the road. Given the Court's finding above that there was no active attempt to apprehend Dale, taken together with the distance between the two vehicles and the lack of evidence supporting the notion that Dale saw [the officer's cruiser's] lights or was aware of police behind him, the Court concludes that Dale was not and could not have been aware of any alleged active attempt of [the officer] to apprehend him.

15. Finally, the Court finds that [Perez and Kevin] have failed to prove that Dale was resisting apprehension by maintaining or increasing his speed, ignoring the officer, or attempting to allude [sic] the officer while driving at speeds in excess of those reasonable and proper under the conditions. Evidence at trial demonstrated that both Dale and [the officer] were driving in excess of the posted speed limit along the three-street route and that Dale ran the traffic signal at 28th and St. Mary's at a high rate of speed. However, in light of the Court's finding above that (1) [the officer] was not attempting to apprehend Dale and (2) Dale was not

aware of [the officer's] presence behind him, the Court cannot conclude that Dale was resisting apprehension.

16. Even if [the officer] had been actively attempting to apprehend Dale and he was aware of such attempt, evidence offered at trial establishes that Dale was driving fast and erratically from the beginning of the drive, well before [the officer] began following the truck. While [Perez and Kevin] contend that [the officer's] speed evidences [her] active pursuit of Dale and Dale's subsequent attempt to resist apprehension, the Court notes that [the officer] never drove faster than Dale and actually drove slower than Dale along 28th Street. Accordingly, the Court finds that [Perez and Kevin] have failed to satisfy the third prong of Section 13-911's definition of a vehicular pursuit.

17. Because [Perez and Kevin] have failed to satisfy all three prongs of Section 13-911's definition of a vehicular pursuit, the Court concludes that a vehicular pursuit did not occur.

18. Assuming arguendo that a vehicle pursuit did occur, the Court also concludes that [the officer's] actions were not the proximate cause of [Perez' and Kevin's] injuries. The Nebraska Supreme Court has held that "in order for a city to be liable for injuries under § 13-911, the first requirement is that the act of the police in pursuing a fleeing motorist be such that without it the injury would not have occurred, commonly known as the "but for" rule, and the second requirement is that the injury be the natural and probable result of that act and without an efficient intervening cause." Mid Century Ins. Co. v. City of Omaha, 242 Neb. 126, 132-33, 494 N.W.2d 320, 324(1992) (internal citations omitted). "The question of proximate cause, in the face of conflicting evidence, is ordinarily one for the trier of fact." Id. at 133, 494 N.W.2d at 324.

19. As a preliminary matter, the Court finds that a vehicular pursuit was not the proximate cause of Kevin's injuries since there were no police following or pursuing Dale's truck at or before Kevin exited the truck at the parking lot on 24th Street. Therefore, recovery against [the City] on behalf of . . . Kevin . . . is hereby denied.

20. As for [Perez], the Court finds that the proximate cause of [her] injuries was the independent acts of Dale . . . . Evidence at trial indicated that Dale was driving erratically and in excess of the posted speed limit prior to [the officer's] becoming involved in the alleged pursuit. Evidence further established that Dale became agitated after seeing [a] Corrections Center employee . . . behind him, based upon his erroneous belief that [such person] was a police officer. As noted above, although [the officer] activated her [cruiser's] mounted lights for a few seconds, [Perez and Kevin] have failed to establish that Dale saw the lights or was aware of her presence behind him. Moreover, when Dale ran the red light and collided with Pasko's vehicle, [the officer] was several blocks behind him and was driving at a slower rate of speed. Therefore, the Court concludes that Dale's reckless driving, at an excessive speed and in violation of a traffic signal, was the proximate cause of Perez['] injuries.

21. In addition, Section 13-911 imposes liability only "[i]n case of death, injury, or property damage to any innocent third party proximately caused by the action of a law enforcement officer ... during vehicular pursuit[.]" Neb. Rev. Stat. § 13-911(1) (Reissue 1997)(emphasis added). Because there was no vehicular pursuit, [Perez and Kevin] are not entitled to recover under Section 13-911.

The district court entered judgment in favor of the City and against Perez and Kevin, and the case was dismissed. Perez and Kevin timely appeal the order of the district court.

## ASSIGNMENTS OF ERROR

Perez and Kevin assert that the district court erred in (1) its interpretation and application of the "'vehicular pursuit'" element of § 13-911; (2) its interpretation and application of the "'proximate cause'" element of § 13-911; (3) its interpretation and application of the element of § 13-911 relating to whether a fleeing vehicle operator "'should have known'" and is charged with and presumed to have known of the vehicular pursuit; (4) its findings of fact and conclusions of law, and such findings and conclusions should be set aside; (5) its admitting into evidence

the Omaha Police Department's investigation into the pursuit, by its not precluding the evidence by sustaining Perez and Kevin's motion in limine and objections to preclude the offering of evidence immaterial and irrelevant to the action, and in its finding the testimony of one of Officer Debra Prososki's superiors to be "'persuasive'" while at the same time determining the Omaha Police Department's investigation was not conclusive of whether a pursuit occurred; and (6) its not finding the testimony from Prososki not credible as a matter of law. In summary, Perez and Kevin contend that the trial judge made the wrong decision for any number of reasons, and this is the core issue we address.

## STANDARD OF REVIEW

■ In actions brought under the Political Subdivisions Tort Claims Act, the findings of the trial court will not be disturbed on appeal unless they are clearly wrong, and when determining the sufficiency of the evidence to sustain the verdict, it must be considered in the light most favorable to the successful party. *Aguallo v. City of Scottsbluff*, 267 Neb. 801, 678 N.W.2d 82 (2004).

■ When an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent, correct conclusion irrespective of the determination made by the court below. *City of Gordon v. Ruse*, 268 Neb. 686, 687 N.W.2d 182 (2004).

## ANALYSIS

■ Section 13-911 provides:

(1) In case of death, injury, or property damage to any innocent third party proximately caused by the action of a law enforcement officer employed by a political subdivision during vehicular pursuit, damages shall be paid to such third party by the political subdivision employing the officer.

. . . .

(5) For purposes of this section, vehicular pursuit means an active attempt by a law enforcement officer operating a motor vehicle to apprehend one or more occupants of another motor vehicle, when the driver of the fleeing vehicle

is or should be aware of such attempt and is resisting apprehension by maintaining or increasing his or her speed, ignoring the officer, or attempting to elude the officer while driving at speeds in excess of those reasonable and proper under the conditions.

Late in the evening on November 29, 2000, and into the early morning of November 30, Perez, Kevin, and Dale had been at a bar "celebrating." The three left the bar in Dale's pickup truck and were headed for home, after dropping off Perez' aunt at her house.

Brent Craft, an employee of the Douglas County Department of Corrections, testified that sometime after 11 or 11:30 p.m., he left the Douglas County jail at 17th and Leavenworth Streets, where he worked. At that point, Craft, who was in his uniform and driving his pickup truck, encountered the pickup that would later be identified as Dale's. Dale was two vehicles ahead, but Craft and Dale were following the same route, traveling west on Jackson Street and then merging onto St. Mary's Avenue. Dale's pickup turned south on 24th Street, but Craft kept going west on St. Mary's. Craft testified that as he was traveling through the intersection at 24th Street and St. Mary's, he continued to watch Dale's pickup. Craft said that Dale's pickup sped up while completing the turn and swerved left and that the passenger came out of the pickup in a somersault motion. Dale's pickup continued to travel southbound on 24th Street. Craft continued a few blocks further on St. Mary's and then looped around to go back to check on the passenger who had somersaulted out of Dale's pickup and who turned out to be Kevin. Craft testified that he never saw a police officer following Dale, and clearly, Craft was not a police officer attempting to apprehend Dale.

Perez and Kevin each testified that while they were riding with Dale that night, Dale's attitude changed suddenly and Dale said that a police officer was behind him, that he was not going to stop, and that he would run if lights came on. Both Perez and Kevin testified that they did not hear sirens or see flashing police lights—although, neither turned around to look because each thought such action would draw more attention if an officer was behind them. Kevin testified that he exited the pickup, which was still moving, in the parking lot at 24th Street and St. Mary's

Avenue. Perez said that she did see flashing lights when Kevin got out of the pickup in the parking lot and that a car she thought was a police vehicle was right behind them in the parking lot. Despite the foregoing testimony, Perez said that she never saw any emergency flashing lights or heard any sirens between the time Kevin exited Dale's pickup at 24th Street and St. Mary's and the time of the collision at 28th and Leavenworth Streets.

Prososki testified that when she first saw Dale's vehicle, it was southbound on 24th Street, approaching Leavenworth Street, and she was northbound on 24th Street, approaching Leavenworth and getting ready to turn eastbound onto Leavenworth on her way to central headquarters. Prososki was coming to a stop at 24th Street and Leavenworth when she saw Dale's vehicle "jump" onto the sidewalk in the parking lot on the northwest corner of 24th Street and Leavenworth. Prososki said that at the time she observed Dale's vehicle, she was going approximately 5 miles per hour, and her best estimate was that Dale's vehicle was going 50 to 60 miles per hour.

Prososki testified that she turned around and headed southbound on 24th Street to follow Dale's vehicle, but she did not turn on the cruiser's overhead emergency lights or siren at that time. Prososki observed Dale's vehicle turn westbound on Poppleton Avenue, and she also turned westbound on Poppleton. Prososki testified that her maximum driving speed between Leavenworth Street and Poppleton was approximately 40 miles per hour and that the speed limit was 35 miles per hour. She turned on the cruiser's overhead emergency lights (which are red, white, and blue) immediately upon making the turn at 24th Street and Poppleton and left them on for approximately 5 seconds, but Dale's vehicle was in her sight for only 2 of those 5 seconds. When she turned on her cruiser's overhead emergency lights, the cruiser's video camera was automatically activated, including a digital clock that is imprinted on the film with seconds visible. Thus, from this point to the crash, there is a videotape of the view from Prososki's cruiser—which videotape we have studied. Prososki testified that she turned her cruiser's overhead emergency lights off because she did not think she could catch up to Dale's vehicle and that she also thought if she turned the lights off, Dale might try to hide in the neighborhood and she would

come across the vehicle. Prososki said she thought the vehicle might be stolen. At approximately 25th Avenue and Poppleton, Prososki radioed that a truck was traveling at a high rate of speed but that she had not gotten close enough to get license plate information. Both Dale and Prososki continued westbound on Poppleton until 28th Street, at which point Dale turned northbound on 28th Street and Prososki followed. At the intersection of 28th Street and St. Mary's Avenue, Dale's vehicle collided with Pasko's vehicle, in which Kuhn was a passenger.

Prososki testified that during the entire time she followed Dale's vehicle, she never used her cruiser's siren and only used its overhead emergency lights for 5 seconds—a fact verified by the videotape. She further testified that she momentarily lost sight of Dale's vehicle several times due to the hills on the streets they were traveling.

A dispatch transcript was received into evidence in which Prososki stated, "I'm attempting to catch up to a vehicle it's northbound 28th Street from Poppleton. It's a dark colored pickup. I'm not close enough to it yet to see anything else." Prososki testified as follows:

Q. [by Kevin's attorney] Were you still attempting to close the distance between yourself and [Dale's] pickup truck as you were westbound on Poppleton and again northbound on 28th?

A. I don't know. I guess that's a fair statement.

Q. That you were attempting to close the distance?

A. I wasn't — I don't think I was actually doing it, or I would have went a lot faster. I mean, the car is capable of 100, but —

She also testified that she was about five blocks behind Dale's vehicle. Prososki testified that when she said "'I'm attempting to catch up to a vehicle,'" she meant that she was trying to figure out what the vehicle was doing so that she could give more information to the other officers.

An officer's merely following a vehicle in order to provide information to other officers as to the vehicle's location does not constitute a vehicular pursuit. See *Lalley v. City of Omaha*, 266 Neb. 893, 670 N.W.2d 327 (2003). In *Lalley*, summary judgment granted in favor of the City by the trial court on the basis that

there was no police pursuit was affirmed on appeal. The evidence in *Lalley* was that the officer following a Nissan which collided with an innocent third party was driving an unmarked vehicle without lights or a siren, that such vehicle was prohibited by police department policy from engaging in pursuit, and that the officer never exceeded the speed limit, while the Nissan was traveling at times up to 70 miles per hour on city streets. While following the Nissan, the officer had been told by supervisors over the radio not to pursue the Nissan. The testimony was that the purpose of following the Nissan was to provide information to other officers as to the Nissan's location.

 In the instant case, a considerable portion of the evidence in the record focuses on time, distance, and speed—from which conflicting arguments are advanced inferring either that Prososki was pursuing Dale's pickup or that she was not engaged in vehicular pursuit as such term is defined in § 13-911. In *Staley v. City of Omaha*, 271 Neb. 543, 713 N.W.2d 457 (2006), the police officer had turned off his cruiser's overhead emergency lights approximately 30 seconds before the speeding vehicle he had been chasing collided with the vehicle occupied by the innocent third party. An award in favor of the innocent third party was upheld by the Supreme Court, which rejected the City's argument that the pursuit could not have been the proximate cause when the officer had broken off pursuit a half mile before the collision. The *Staley* court said that the "issue of proximate cause in the context of a vehicular pursuit case can[not] be reduced to a rigid formula involving time and distance." 271 Neb. at 550, 713 N.W.2d at 466. Perez and Kevin's argument in the instant case, when reduced to its essence, is that "time and distance" calculations in the evidence show a police pursuit, because Prososki's cruiser's speed increased and, at times, Prososki closed the distance between her cruiser and Dale's pickup. But, such argument ignores the many other facts and their meaning as well articulated by the trial judge's decision which we have extensively set forth, in addition to the cautionary holding of *Staley* discussed above. The *Staley* court said that the question of proximate cause, in the face of conflicting evidence, is ordinarily one for the trier of fact, and the court's determination will not be set aside unless clearly wrong.

In the present case, the trial court found that there was not a vehicular pursuit within the meaning of § 13-911, and we have earlier quoted such finding and the factual conclusions reached by the trial court in arriving at such ultimate conclusion. While the evidence arguably supports the conclusion that Prososki was "pursuing" Dale's pickup as that term is commonly used in everyday language, a police pursuit as defined in the statute involves multiple elements and, thus, is a much more nuanced matter than simply deciding whether one vehicle is trying to "catch up" to, or maintain sight of, another. Therefore, bearing in mind the detailed factual determinations of the trial court and viewing the evidence in the light most favorable to the City, see *Aguallo v. City of Scottsbluff*, 267 Neb. 801, 678 N.W.2d 82 (2004), we agree with the district court that Prososki's actions did not amount to an "active attempt" to apprehend one or more occupants of Dale's vehicle and that thus, there was not a vehicular pursuit pursuant to § 13-911.

Finally, even if we were to assume a vehicular pursuit did occur, Prososki's actions were not the proximate cause of Perez' and Kevin's injuries. In *Mid Century Ins. Co. v. City of Omaha*, 242 Neb. 126, 494 N.W.2d 320 (1992), the Nebraska Supreme Court affirmed a district court's ruling that an officer's pursuit was not the proximate cause of an accident. In that case, Lee Williams' vehicle was stopped in relation to an assault at a nightclub and Williams was put into the back of Officer Joseph Vaccaro's police cruiser while Vaccaro checked Williams' identity. While Williams was in the back of the cruiser, Vaccaro was advised by the police dispatcher that there had been an assault and a hit-and-run accident in the area of the nightclub and that Williams should be brought back there. Williams, who heard the broadcast, said, "'Fuck it, I'm leaving.'" 242 Neb. at 130, 494 N.W.2d at 323. Williams got into his own car, and when Vaccaro tried to reach in and take the keys away from Williams, Williams started the car and began moving forward while holding onto Vaccaro's hand and dragging him three or four steps. Williams then let go of Vaccaro and took off. Vaccaro radioed that Williams got away and gave the direction Williams was driving.

Officer Michael McGowen, who knew about the alleged assault and heard Vaccaro's broadcast, thought the broadcast

referred to a vehicle he had previously seen at a gas station and began heading in that direction. While driving, McGowen saw a car he knew to be Williams' car coming toward him. McGowen attempted to use the left front of his police cruiser to strike the left rear of Williams' car in order to cause Williams' car to spin around, but McGowen missed. McGowen then got his cruiser turned around, and he headed in Williams' direction. McGowen lost sight of Williams due to a hill on the road, so McGowen accelerated to 65 miles per hour, and when McGowen reached the top of the hill, he determined that he could not get close enough for a pursuit. McGowen took his foot off the accelerator and then witnessed a collision a few blocks away between Williams' car and another car. There was a factual issue as to whether McGowen had his cruiser's red lights on. The Nebraska Supreme Court said:

> The evidence of the involvement of McGowen in this matter, whom the trial court found to be in pursuit of Williams, was his knowledge gained from the radio broadcasts and his observation of Williams' car for the first time, proceeding toward him several blocks away at a speed of well over 75 or 80 miles per hour, estimated at 90 miles per hour as they crossed paths. There is nothing in the record to establish that McGowen's presence in the vicinity had anything at all to do with Williams' fantastic trip.

> True, McGowen attempted to stop Williams by ramming him. However, there is no evidence that such action altered in the slightest the speed or direction of travel of Williams. Williams was out of sight of McGowen in a matter of seconds, and the accident occurred a matter of seconds after McGowen next spotted Williams and had given up any chase he might have intended to undertake.

> Other than the fact that Williams knew he was in trouble for leaving the scene when he was wanted back at [the nightclub], he cannot be heard to say that he knew he would be pursued.

> By the same token, by the time Williams could have been aware of McGowen's involvement in this episode, if in fact Williams was aware, he was already following a course of

undiminished breakneck speed which would inevitably lead to the accident seconds later.

*Mid Century Ins. Co. v. City of Omaha,* 242 Neb. 126, 132, 494 N.W.2d 320, 324 (1992). Thus, the Nebraska Supreme Court affirmed the district court's ruling that McGowen's pursuit was not the proximate cause of the accident.

Likewise, Prososki was not the proximate cause of the collision in the instant case. At best, we can speculate that when Dale initially thought he was being followed by a police officer, he was really being followed by Craft, an employee of the Douglas County Department of Corrections, who was not a police officer and who was driving his own pickup. When Prososki observed Dale's vehicle, it was already "jump[ing]" onto the sidewalk in a parking lot and traveling at an excessive speed. She never turned on her cruiser's siren, and its overhead emergency lights were on for 5 seconds, as evidenced by the videotape. We note that during such 5 seconds in the videotape, Dale's faraway taillights are only visible for 2 seconds—a fact to which Prososki testified. Additionally, the brief moments when Prososki had her cruiser's overhead emergency lights on occurred just when she turned onto Poppleton Avenue, and the crash occurred a considerable distance from that location. Like the officer in *Mid Century Ins. Co., supra,* by the time Prososki became involved in the instant case, Dale had already embarked on a reckless course of conduct, and in fact, Dale was out of Prososki's vision and vice versa at the time he ran the red traffic light and his vehicle hit Pasko's vehicle. Therefore, even if there was pursuit by Prososki, it was only in the same sense as in *Mid Century Ins. Co.,* and such was not the cause of Perez' injuries, which were caused by Dale's reckless and unlawful driving. At most, Dale could have seen only 2 seconds of flashing police cruiser lights and, thereafter, merely headlights in the distance behind him, visible at times, which were not closing the gap on him in any substantial way. As for Kevin's injuries, the vehicular pursuit was not the proximate cause of Kevin's injuries, because no police officer was even following, let alone pursuing, Dale's truck when Kevin "exited" the truck and sustained his injuries.

Because we have found that a pursuit pursuant to § 13-911 did not occur and that even if it did, any such pursuit was not the

proximate cause of Perez' and Kevin's injuries, we do not need to address the remaining assignments of error. See *Harper v. Clarke*, 14 Neb. App. 649, 713 N.W.2d 502 (2006) (appellate court is not obligated to engage in analysis which is not needed to adjudicate controversy before it).

### CONCLUSION

For the reasons stated above, we affirm the trial court's finding that a pursuit pursuant to § 13-911 did not occur and that even if it did, any pursuit was not the proximate cause of Perez' and Kevin's injuries. Therefore, Perez and Kevin are not entitled to recover damages under § 13-911.

AFFIRMED.