RICHARD C. JURA, SPECIAL ADMINISTRATOR OF THE ESTATE
OF AMANDA C. JURA, DECEASED, APPELLANT, V. CITY
OF OMAHA, A MUNICIPAL CORPORATION, APPELLEE.

727 N.W.2d 735

Filed February 27, 2007.   No. A-05-165.

William J. Pfeffer, of Pfeffer Law Offices, for appellant.

Thomas O. Mumgaard, Deputy Omaha City Attorney, for appellee.

IRWIN and SIEVERS, Judges, and HANNON, Judge, Retired.

SIEVERS, Judge.

Richard C. Jura (Jura), as special administrator of the estate of Amanda C. Jura, appeals from the decision of the district court for Douglas County which dismissed his wrongful death claim against the City of Omaha (the City). This appeal involves a police pursuit that resulted in a traffic accident that killed two passengers. The issue is whether one of the passengers, Amanda C. Jura (Amanda), was an "innocent third party," thus entitling her estate to recover under Neb. Rev. Stat. § 13-911 (Reissue 1997). We affirm the trial court's finding that Amanda was not an innocent third party.

## FACTUAL BACKGROUND

At approximately 4 a.m. on December 8, 2002, in Omaha, Nebraska, Amanda was a back seat passenger in a stolen Lincoln Town Car (Lincoln) driven by Jacob Witt (Witt had the car for approximately 1 week prior to December 8), although it does not appear that Amanda knew the Lincoln was stolen. Also in the Lincoln were Tiffany Bruce, in the front passenger seat, and Robin Abraham, also in the back seat. Amanda, Witt, Bruce, and Abraham left a party at a private residence and took the Lincoln to "get more dope." Amanda and Abraham were introduced to Witt approximately a half hour before leaving with him in the Lincoln. While in the Lincoln, they drove past a police cruiser driven by Omaha police officer Thomas Deignan. Officer Deignan began to follow the Lincoln, but he did not turn on the cruiser's lights or sirens. Officer Deignan admitted that no traffic violations were committed, but he thought it was strange that young people would be out in an expensive car at 4 o'clock in the morning. Officer Deignan called the police dispatcher to check the Lincoln's license plates, and the dispatcher informed Officer Deignan that the Lincoln was reported stolen. The Lincoln "started to take off," and Officer Deignan declared "pursuit" and turned on the cruiser's lights and sirens. Officer Deignan also radioed for other officers to help in the pursuit. During the pursuit, the Lincoln missed a curve, went over an embankment, and crashed into a tree. Amanda and Abraham died as a result of their injuries. Additional facts will be set forth as necessary in our analysis.

## PROCEDURAL BACKGROUND

Jura filed a complaint on August 14, 2003. The parties stipulated that Jura satisfied the requirements of the Political Subdivisions Tort Claims Act. Jura's complaint alleged that Amanda was a passenger in the Lincoln driven by Witt; that Witt was attempting to evade vehicular pursuit by one of the City's law enforcement officers; that as a result of Witt's attempt to avoid vehicular pursuit, he lost control of the Lincoln and struck a tree, causing Amanda personal injuries and ultimately her death and resulting in both special and general damages. The complaint alleges that the City was liable under § 13-911, the

strict liability statute for injuries or death to innocent third parties caused by police motor vehicle pursuits.

The City's answer denied that Amanda was an innocent third party under § 13-911. The City alleged contributory negligence and assumption of the risk as affirmative defenses— matters we need not discuss because the case is determined by Amanda's status.

The district court granted the City's motion to bifurcate the issues of liability and damages. A trial was held on October 13 and 19, 2004, regarding the liability issue. At such trial, Jura's case was consolidated with cases brought by or on behalf of the other two passengers. Abraham was found not to be an innocent third party by the trial court, a decision we have previously affirmed. See *Reed v. City of Omaha, ante* p. 234, 724 N.W.2d 834 (2006).

In an order filed January 19, 2005, the trial court found that Amanda was not an " 'innocent third part[y]' within the contemplation of . . . § 13-911(1)." The trial court found that on the evening of December 7, 2004, Amanda and Abraham appeared at Bruce's house, where Witt was present; that the four individuals smoked methamphetamine and marijuana and collectively decided that they were going out to buy more drugs; that they left Bruce's house with Witt driving the stolen Lincoln; that Officer Deignan ran a check on the Lincoln's license plates and found there were no warrants, but that the Lincoln was stolen; that Witt started to " 'take off' " and Officer Deignan began a pursuit; and that the high speed pursuit led to its terminus in a park in Omaha.

The trial court also found that Witt gave inconsistent accounts of the chase. Witt's first statement (and a letter he wrote to Bruce) made no mention of the passengers' requesting him to stop, but, rather, Witt said that someone tried to give him directions not to hit a curb. Witt further stated that the passengers made comments regarding the license plate check and outstanding warrants. Witt told investigators that Abraham said: "[H]urry up and get away from 'em 'cause I got a warrant, I got a warrant in Sarpy County, and I got a warrant somewhere else." Witt's later testimony, as well as Bruce's testimony, was that after the

police started the pursuit, the passengers all sought to dissuade Witt from fleeing. The district court said:

> To the extent that their accounts are inconsistent, the Court concludes that Witt's custodial statement is the most credible version of these events. It was given within hours of the events themselves. It was given by a person who did not know or wasn't focusing on the civil aspects of the case. It was given to interrogators who were concentrating on the criminal side of the case. In sum, it was the most candid, reliable account of those few minutes.

The district court found that Abraham was the passenger who told Witt that she had an arrest warrant outstanding.

As to Amanda, the district court said:

> Amanda Jura comes as close as any of the three to an 'innocent third party.' She may not have been subjectively aware that Witt was driving a stolen vehicle, although a young man without a job behind the wheel of such an expensive car would prompt questions for most people. [Amanda] did not have any outstanding warrants, and she may not have been carrying drugs. Nevertheless, at 4:00 A.M. when this journey began, the four had agreed to drive Witt from the house at which they were smoking methamphetamine to another location, and to continue their drug use or to purchase additional drugs. All were aware that the group possessed controlled substances, and were subject to arrest if stopped and searched. They were all aware, including [Amanda], that they were taking a circuitous route to their destination, to avoid encountering police in the early morning hours. The confluence of all of these facts exceeds acquiescence. [Amanda], together with her friends Bruce and Abraham, promoted or advocated Witt's flight, at the time when they all became aware of and discussed the first officer's data check on their license plates, and the arrest warrant.
>
> None of these girls consented to, or encouraged Witt to drive erratically, or to crash. They just wanted him to get away. They knew that it would be better for them if he did elude police.

Furthermore, the district court held that Amanda fell within the category of individuals " 'sought to be apprehended in the fleeing vehicle' " and, thus, was not an innocent third party entitled to recovery under § 13-911(1). The district court dismissed Jura's case with prejudice.

Jura timely appeals the order of the district court.

## ASSIGNMENT OF ERROR

Jura asserts that the district court erred in finding that Amanda was not an innocent third party under the terms of § 13-911.

## STANDARD OF REVIEW

■ In actions brought under the Political Subdivisions Tort Claims Act, the findings of the trial court will not be disturbed on appeal unless they are clearly wrong, and when determining the sufficiency of the evidence to sustain the verdict, it must be considered in the light most favorable to the successful party. *Aguallo v. City of Scottsbluff*, 267 Neb. 801, 678 N.W.2d 82 (2004).

■ When an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent, correct conclusion irrespective of the determination made by the court below. *City of Gordon v. Ruse*, 268 Neb. 686, 687 N.W.2d 182 (2004).

## ANALYSIS

■ Jura argues that the district court erred in finding that Amanda was not an innocent third party pursuant to § 13-911(1), which states: "In case of death, injury, or property damage to any innocent third party proximately caused by the action of a law enforcement officer employed by a political subdivision during vehicular pursuit, damages shall be paid to such third party by the political subdivision employing the officer." For a passenger to be an innocent third party, the passenger (1) must not have promoted, provoked, or persuaded the driver to engage in flight from law enforcement personnel and (2) must not be one who is sought to be apprehended in the fleeing vehicle. *Reed v. City of Omaha, ante* p. 234, 724 N.W.2d 834 (2006). See, also, *Henery v. City of Omaha*, 263 Neb. 700, 641 N.W.2d 644 (2002). Either circumstance prevents a finding that a claimant

in a police pursuit case was an innocent third party. *Reed v. City of Omaha, supra.* As a result, we need not analyze both disqualifying circumstances, and after our study of the record in this case, we conclude that the disqualifying factor of "sought to be apprehended" lends itself to the most straightforward analysis and resolution. Therefore, we do not address the district court's conclusion that Amanda promoted Witt's flight.

Whether Amanda was a person "sought to be apprehended in the fleeing vehicle" is a mixed question of fact and law, and given that the facts surrounding the question of "apprehension" are largely undisputed, we reach our own independent conclusion as to whether Amanda was a person "sought to be apprehended." See *State v. Rathjen,* 266 Neb. 62, 662 N.W.2d 591 (2003). Black's Law Dictionary 110 (8th ed. 2004) defines "apprehension" as "[s]eizure in the name of the law; arrest . . . ." But apprehend can also mean to "catch," see *Reyes-Sanchez v. U.S. Atty. Gen.,* 369 F.3d 1239, 1243 (11th Cir. 2004), or "detain," see *United States v. Moderacki,* 280 F. Supp. 633, 638 (D. Del. 1968).

Part of the district court's rationale for its conclusion on the issue of apprehension was that "[a]ll were aware that the group possessed controlled substances, and were subject to arrest if stopped and searched." To the extent that the district court meant that everyone in the group was subject to arrest for the drugs in Bruce's purse, we reject that conclusion. All of the passengers knew that Bruce had drugs in her purse, but such fact did not make Amanda necessarily subject to arrest, because the purse was not her property and she was not in possession of the drugs. Evidence that the accused had physical or constructive possession of a drug with knowledge of its presence and its character as a controlled substance is sufficient to support a finding of possession. *State v. Sotelo,* 197 Neb. 334, 248 N.W.2d 767 (1977). There was no evidence to show actual or constructive possession of the drugs by Amanda. However, of greater significance is the simple fact that possession of drugs was not the officer's basis for starting or continuing the pursuit, and seeking to apprehend the vehicle's occupants, because he had no knowledge of such circumstance until after the pursuit ended.

Officer Deignan started the pursuit of the Lincoln once he became aware that the vehicle was stolen. The evidence does not establish that Amanda knew the Lincoln was stolen, but as the trial court reasoned, an inference of such knowledge may be permissible. However, Officer Deignan testified as follows:

Q. [By Bruce's counsel:] Are you aware, with your training as a police officer, as to whether there's such a crime as riding in a stolen vehicle?

A. As far as being a passenger?

Q. Yes.

A. There is a charge. I believe it's 28511, unlawful occupancy. Something similar to that.

Q. Have you ever charged anyone with that?

A. I have not, no.

Q. Would it be accurate to say that you were most interested in stopping the vehicle so that you could apprehend the driver of the stolen vehicle?

A. Not at that time, no.

Q. Didn't matter to you, driver versus passenger?

A. I wanted everybody inside the vehicle.

Officer Deignan also testified: "When you have a stolen vehicle with multiple occupants, you don't know who stole the vehicle, where it was taken from, who might have been driving it earlier. You don't have that information before you stop the vehicle and question the occupants." Also, two other Omaha police officers testified that in a situation involving a stolen vehicle, proper police procedure requires the officer to "catch" all occupants in the car, because not knowing when the vehicle was stolen, it is possible that everyone in the vehicle could have been involved in the auto theft.

Given the testimony of the police officers, we find that Amanda was a person sought to be apprehended in the fleeing vehicle. A police officer's grounds for seeking to apprehend occupants in a vehicular chase situation must have a reasonable basis in the law and facts. Such a basis clearly exists in this case, because the vehicle was a stolen vehicle, as opposed to, for example, a chase starting with a traffic violation. Thus, Amanda was not an innocent third party and her estate is barred from recovering under § 13-911. It follows that we need not address

whether Amanda promoted, provoked, or persuaded the driver to engage in flight from law enforcement personnel. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the case and controversy before it. *Brockhaus v. Lambert*, 259 Neb. 160, 608 N.W.2d 588 (2000).

AFFIRMED.

INBODY, Chief Judge, not participating.