Marcus M. Williams, appellee,
v. City of Omaha, appellant.
___ N.W.2d ___

Filed July 17, 2015.    No. S-14-796.

1. **Statutes: Appeal and Error.** Statutory interpretation is a question of law, which an appellate court must resolve independently of the trial court.

2. **Political Subdivisions Tort Claims Act: Appeal and Error.** In actions brought under the Political Subdivisions Tort Claims Act, an appellate court will not disturb the factual findings of the trial court unless they are clearly wrong.

3. **Political Subdivisions Tort Claims Act: Judgments: Appeal and Error.** In actions brought pursuant to the Political Subdivisions Tort Claims Act, when determining the sufficiency of the evidence to sustain the trial court's judgment, it must be considered in the light most favorable to the successful party; every controverted fact must be resolved in favor of such party, and it is entitled to the benefit of every inference that can reasonably be deduced from the evidence.

4. **Political Subdivisions Tort Claims Act: Police Officers and Sheriffs: Motor Vehicles: Words and Phrases.** A police pursuit as defined in Neb. Rev. Stat. § 13-911 (Reissue 2012) involves multiple elements and is a much more nuanced matter than simply deciding whether one vehicle is trying to catch up to, or maintain sight of, another.

5. **Political Subdivisions Tort Claims Act: Police Officers and Sheriffs: Motor Vehicles: Proof.** Three requirements must be met before a finding can be made that a vehicular pursuit under Neb. Rev. Stat. § 13-911 (Reissue 2012) has occurred: (1) There must be an active attempt by a law enforcement officer to apprehend occupants of another motor vehicle, (2) the driver of the fleeing vehicle must be aware of the attempt to apprehend, and (3) the driver must resist apprehension by taking some action, such as speeding, ignoring the officer, or attempting to elude the officer while driving at a speed which is not reasonable under the conditions.

6. **Political Subdivisions Tort Claims Act: Police Officers and Sheriffs: Motor Vehicles.** Whether law enforcement sought to apprehend an individual under Neb. Rev. Stat. § 13-911 (Reissue 2012) is a mixed question of law and fact.

7. **Political Subdivisions Tort Claims Act: Police Officers and Sheriffs: Motor Vehicles: Strict Liability.** Under Neb. Rev. Stat. § 13-911 (Reissue 2012), a political subdivision is strictly liable for injuries to an "innocent third party" during a vehicular pursuit, regardless whether the law enforcement officer's actions were otherwise proper or even necessary.

8. **Political Subdivisions Tort Claims Act: Motor Vehicles: Proximate Cause.** For a pursuit under Neb. Rev. Stat. § 13-911 (Reissue 2012) to have been a proximate cause of an accident, the pursuit must have caused the motorist to resist apprehension by maintaining or increasing speed, or by attempting to elude the pursuing officer at unreasonable speeds.

Appeal from the District Court for Douglas County: W. MARK ASHFORD, Judge. Affirmed.

Thomas O. Mumgaard, Deputy Omaha City Attorney, for appellant.

Edward F. Fogarty, of Fogarty & Lund, and John J. Ekeh, of Ekeh Law Office, for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, McCORMACK, MILLER-LERMAN, and CASSEL, JJ.

CASSEL, J.

## I. INTRODUCTION

After a bench trial, the City of Omaha, Nebraska (City), appeals from a money judgment for injuries sustained by an innocent third party in a motor vehicle collision involving a vehicle allegedly being pursued by police officers. The City contends that the pursuit statute[1] did not apply because the officers intended only to stop the vehicle and not to "apprehend" the driver. Under our deferential standard of review,

---

[1] See Neb. Rev. Stat. § 13-911 (Reissue 2012).

two factual findings support an inference that the officers' objective changed before the collision. The City also criticizes the court's assessment of the officers' intent. But the court's discussion did not detract from its essential findings. Because the district court's factual findings are not clearly erroneous and support its conclusion that the police began a pursuit prior to the collision, we affirm the judgment.

## II. BACKGROUND

### 1. STIPULATED FACTS

The parties stipulated to basic facts, which we summarize as follows:

• Two motor vehicles collided at the intersection of Spaulding and 30th Streets in Omaha.
• William G. Webster was driving westbound on Spaulding Street.
• Marcus M. Williams was northbound on 30th Street.
• Webster violated a stop sign, resulting in the collision.
• An Omaha police cruiser, driven by Officer Jeffrey Wasmund, who was accompanied by Officer Kalon Fancher, was east of the intersection.
• After the collision, the officers drove through the intersection to follow Webster, who was fleeing from the scene.
• At a point west of the intersection, Fancher used the cruiser's radio to announce that the officers were in pursuit.
• Shortly after the radio call, the officers' supervisor ordered them to terminate the pursuit.

### 2. PLEADINGS

Williams sued the City. He alleged that at the time of the crash, Webster was fleeing to avoid apprehension by a police cruiser that was actively attempting to apprehend Webster. Williams claimed that by virtue of § 13-911, the City was strictly liable for all of his damages. The City denied liability. It alleged that the sole proximate cause of any damages to Williams was the negligent or intentional actions of Webster.

### 3. Evidence at Trial

During trial, Williams testified about his directions of travel on the day of the accident. As Williams approached Binney Street, while driving north on 30th Street, he saw a police cruiser behind a white car—Webster's vehicle—turning east onto Wirt Street. The police cruiser was about 1½ blocks in front of Williams when it turned onto Wirt Street. Williams testified that Webster's vehicle and the police cruiser were traveling at a "normal" speed and that the cruiser did not have its overhead lights activated. Williams looked eastward down Wirt Street as he approached it from the south, and he saw that Webster's vehicle and the police cruiser had turned onto 28th Avenue going north. Williams testified that the cruiser's overhead lights were flashing at that time.

Williams testified that Webster's vehicle was being "pursued" by the police cruiser. According to Williams, the police cruiser had "the flashers on chasing [Webster]." At 30th and Spaulding Streets, Webster's vehicle collided with Williams' vehicle. After the collision, onlookers told Williams that the police were in pursuit. When Williams' fiance and her grandmother came to get him, he told them that he had "witnessed a high-speed police chase, and . . . it end[ed] up colliding into [him]."

Fancher described the events occurring approximately 1 minute before the collision. He and Wasmund were traveling westbound on Spaulding Street when they observed a white vehicle with an "expired registration" that was approaching the intersection of 30th and Spaulding Streets. The officers tried to conduct a traffic stop, but Webster's vehicle instead "shot through the intersection and collided with a vehicle." Fancher believed the officers were approximately one block east of 30th Street when they decided to conduct a traffic stop. Once they realized that Webster's vehicle had an expired registration, they turned on the cruiser's overhead flashing lights. Fancher estimated that the officers were two or three car lengths behind Webster's vehicle when they activated the lights.

Wasmund testified that when he determined the license plate on Webster's vehicle was expired, his cruiser was near 29th and Spaulding Streets. He then activated the overhead lights in order to conduct a traffic stop. Webster's vehicle did not stop and instead continued westbound on Spaulding Street. Webster disregarded the stop sign at 30th and Spaulding Streets and collided with Williams' vehicle. Wasmund testified that he was one or two car lengths behind Webster's vehicle and that he was driving approximately 25 miles per hour. Wasmund estimated that 2 or 3 seconds elapsed between his activation of the overhead lights and the collision. When Webster's vehicle did not stop after colliding with Williams' vehicle, Wasmund decided to follow the car. He testified that as the officers approached the block after 30th and Spaulding Streets, Fancher got on the radio to let others know that they were initiating a pursuit. Wasmund denied that he decided to pursue Webster before the collision.

A sergeant with the Omaha Police Department testified that the department's standard operating procedures required officers to immediately get on the radio and advise that they were in pursuit as soon as they actively began a pursuit. The sergeant testified that Fancher reported the reason for the pursuit was that the vehicle had struck another vehicle at 30th and Spaulding Streets. According to a police pursuit recording form, the officers reported that the pursuit began at 30th and Spaulding Streets.

### 4. DISTRICT COURT'S JUDGMENT

The district court entered judgment in favor of Williams. The court specifically found the following:

- The "[o]fficers activated their emergency lights but not the siren."
- "[A]fter the officer activated the emergency lights the Webster vehicle 'jack rabbited.'"
- "[B]oth Officer Wasmund['s cruiser] and the Webster vehicle were accelerating just before the collision."

The court also made numerous findings regarding the officers' intent. Among the findings were that once Webster's vehicle accelerated, Wasmund "instantaneously decided to pursue by accelerating his vehicle"; that the decision to pursue "occurred either at the moment that the Webster vehicle accelerated or at the moment the Webster vehicle ran the stop sign"; that "the decision to pursue and the decision to flee [were] made before the collision"; that "the actions of the fleeing Webster vehicle shows [sic] that Webster was aware of the pursuit of the officer and as a result ran the stop sign striking [Williams]"; and that "[w]ords, actions and conduct shown in the evidence . . . are sufficient . . . to give the Court a basis for the finding of intent to pursue."

The court found that the City was strictly liable for Williams' damages and entered a judgment of $172,138.56 against the City. The City filed a timely appeal, which we moved to our docket.[2]

## III. ASSIGNMENTS OF ERROR

The City assigns eight errors which, consolidated and restated, allege that the district court erred in finding that a pursuit began prior to the collision and that the pursuit proximately caused the collision.

## IV. STANDARD OF REVIEW

[1] Statutory interpretation is a question of law, which an appellate court must resolve independently of the trial court.[3]

[2,3] In actions brought under the Political Subdivisions Tort Claims Act, an appellate court will not disturb the factual findings of the trial court unless they are clearly wrong.[4] And in such actions, when determining the sufficiency of the evidence to sustain the trial court's judgment, it must be considered in the light most favorable to the successful party; every

---

[2] See Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

[3] *Credit Mgmt. Servs. v. Jefferson*, 290 Neb. 664, 861 N.W.2d 432 (2015).

[4] *Maclovi-Sierra v. City of Omaha*, 290 Neb. 443, 860 N.W.2d 763 (2015).

controverted fact must be resolved in favor of such party, and it is entitled to the benefit of every inference that can reasonably be deduced from the evidence.[5]

## V. ANALYSIS

### 1. Pursuit Statute

Our analysis begins with § 13-911, the pursuit statute. It provides that when an innocent third party suffers injury proximately caused by the action of a law enforcement officer during vehicular pursuit, the political subdivision employing the officer shall be liable for damages to the innocent third party.[6] The pursuit statute defines "vehicular pursuit" as

> an active attempt by a law enforcement officer operating a motor vehicle to apprehend one or more occupants of another motor vehicle, when the driver of the fleeing vehicle is or should be aware of such attempt and is resisting apprehension by maintaining or increasing his or her speed, ignoring the officer, or attempting to elude the officer while driving at speeds in excess of those reasonable and proper under the conditions.[7]

### 2. Whether Officers Were in Pursuit at Time of Collision

[4] The City challenges the district court's determination that a pursuit began before the collision. A police pursuit as defined in § 13-911 involves multiple elements and is a much more nuanced matter than simply deciding whether one vehicle is trying to catch up to, or maintain sight of, another.[8] Among other arguments, the City contends that the "time was too short for the officers to respond in any way that could be seen as an active attempt to apprehend Webster,"[9] that the

---

[5] *Id.*

[6] § 13-911(1).

[7] § 13-911(5).

[8] See *Perez v. City of Omaha*, 15 Neb. App. 502, 731 N.W.2d 604 (2007).

[9] Brief for appellant at 17.

officers' decision to pursue is not the affirmative act required under the statute, and that the pursuit statute does not impose liability when officers attempt to make a traffic stop and the vehicle flees.

[5] Three requirements must be met before a finding can be made that a vehicular pursuit under § 13-911 has occurred: (1) There must be an active attempt by a law enforcement officer to apprehend occupants of another motor vehicle, (2) the driver of the fleeing vehicle must be aware of the attempt to apprehend, and (3) the driver must resist apprehension by taking some action, such as speeding, ignoring the officer, or attempting to elude the officer while driving at a speed which is not reasonable under the conditions.[10] We consider these requirements in turn.

### (a) Active Attempt to Apprehend

The first component of a vehicular pursuit under the statute requires an "active attempt" to "apprehend." These terms are not defined in the Political Subdivisions Tort Claims Act. We agree with the City that under § 13-911, the attempt to apprehend the driver "must be more than passively driving, monitoring, or watching."[11]

But two actions by the officers prior to the collision demonstrate conduct above and beyond mere driving, monitoring, or watching. First, while following Webster's vehicle, the officers activated the cruiser's overhead flashing lights in order to get Webster to stop. Second, the police cruiser accelerated just before the collision. These facts, which are not clearly wrong, establish an "active attempt."

[6] The City focuses primarily upon the word "apprehend." Whether law enforcement sought to apprehend an individual under § 13-911 is a mixed question of law and fact.[12] The meaning of "apprehend" presents a question of law. The City

---

[10] See *Lalley v. City of Omaha*, 266 Neb. 893, 670 N.W.2d 327 (2003).

[11] See brief for appellant at 28.

[12] See *Maclovi-Sierra v. City of Omaha, supra* note 4.

contends that "[a]ll the evidence shows the officers' conduct was nothing more than an attempt to make a traffic stop for a minor violation that would not lead to apprehension."[13] In this case, we need not decide whether liability under § 13-911 can be established where an officer does nothing more than attempt to stop a vehicle by operating the cruiser's emergency lights. Here, the police not only activated the lights but also accelerated their vehicle prior to the collision.

Although "apprehend" has various meanings depending on the context, an inference arises that the officers were attempting to apprehend Webster. And as the prevailing party, Williams is entitled to the benefit of every inference that can reasonably be deduced from the evidence.[14] The word "apprehend" is derived from a French word meaning "to lay hold of, seize."[15] In the physical context, it can mean "[t]o lay hold upon, seize, with hands, teeth, etc."; "[t]o seize (a person) in name of law, to arrest"; "[t]o seize upon for one's own, take possession of"; or "[t]o seize or embrace (an offer or opportunity)."[16] The Nebraska Court of Appeals noted that "apprehension" has been defined as "'[s]eizure in the name of the law; arrest,'"[17] but that "apprehend" can mean to "'catch'" or "'detain.'"[18] While the officers may not have intended to "apprehend" Webster at the moment when they activated their overhead lights, their vehicle's acceleration prior to the collision raised an inference that their objective had changed.

[7] Our application of the word "apprehend" is consistent with the purpose of the statute. Under § 13-911, a political

---

[13] Brief for appellant at 23.

[14] *Maclovi-Sierra v. City of Omaha, supra* note 4.

[15] 1 The Oxford English Dictionary 581 (2d ed. 1989).

[16] *Id.*

[17] *Jura v. City of Omaha*, 15 Neb. App. 390, 396, 727 N.W.2d 735, 740 (2007).

[18] *Id.*

subdivision is strictly liable for injuries to an "innocent third party" during a vehicular pursuit, regardless whether the law enforcement officer's actions were otherwise proper or even necessary.[19] The obvious purpose is to shift the burden of bearing the costs resulting from such injuries away from the innocent third party. Clearly, the purpose applies where police pursue a vehicle in order to make an arrest. But it equally applies where police actively pursue a vehicle that flees from an attempt to initiate a traffic stop.

The City also focuses on the district court's statements regarding the police officers' intent to pursue Webster. The City emphasizes the subjective views of the officers and states—without citing any authority—that the "'active attempt' to 'apprehend' requirement is measured by the officer's intent."[20] And the district court concentrated on when the officers made the decision to pursue. But the court's discussion of the officers' intent, even if not directly pertinent, does not detract from the two factual findings that were essential to the court's decision.

The district court found that prior to the collision, the officers activated the cruiser's overhead lights and the cruiser was increasing its speed. As we have already said, these factual findings are not clearly erroneous. And these facts support the court's conclusion that the police were actively attempting to apprehend Webster. The first component of a vehicular pursuit was established.

### (b) Awareness of Attempt to Apprehend

Next, for a vehicular pursuit under § 13-911, the driver must be aware of the attempt to apprehend. Webster did not testify at trial. If he made any statements reflecting on the issue, they were not included in the evidence. Thus, Webster's

---

[19] *Werner v. County of Platte*, 284 Neb. 899, 824 N.W.2d 38 (2012).

[20] Brief for appellant at 25.

awareness of the attempt to apprehend him must be based on his actions at the time.

The district court found that after the officers activated the cruiser's overhead lights, Webster increased his speed and "ran a stop sign." These facts support a reasonable inference that Webster was aware of the attempt to apprehend him. Giving Williams the benefit of this inference, as we must, the evidence supports the district court's conclusion.

### (c) Resistance of Apprehension

The last component for a vehicular pursuit is resistance of apprehension by the driver. The district court found that Webster was aware of the pursuit and, as a result, disregarded the stop sign. The City concedes that this element was met, stating, "There was no dispute that when William[s'] car was struck, Webster was resisting apprehension by driving at speeds in excess of those reasonable and proper under the conditions."[21]

### (d) Conclusion as to Pursuit

The district court's factual findings were not clearly erroneous. Viewing the evidence most favorably to Williams and giving him the benefit of every reasonable inference, we cannot say that the district court was clearly wrong in concluding that a pursuit was in progress at the time of the collision.

### 3. Whether Pursuit Was Proximate Cause of Collision

[8] For the pursuit under § 13-911 to have been a proximate cause of the accident, the pursuit must have caused the motorist to resist apprehension by maintaining or increasing speed, or by attempting to elude the pursuing officer at unreasonable speeds.[22] The City's argument that the pursuit was not the proximate cause of the collision is premised upon its belief

---

[21] *Id.* at 17.

[22] *Staley v. City of Omaha*, 271 Neb. 543, 713 N.W.2d 457 (2006).

that there was no vehicular pursuit before the collision. We have rejected that argument. The district court's conclusion that the pursuit was a proximate cause of the collision and the damages suffered by Williams was not clearly wrong.

## VI. CONCLUSION

We consider the evidence in the light most favorable to Williams as the successful party, resolve every controverted fact in his favor, and give him the benefit of every inference that can reasonably be deduced from the evidence. Viewed in that light, the district court's factual findings are not clearly erroneous. And having accepted the district court's factual findings, we find no clear error in the court's conclusion that the police officers made an active attempt to apprehend Webster prior to the collision. Because the other requirements for a pursuit under § 13-911 were satisfied, we agree that the officers' pursuit of Webster was a proximate cause of the collision. We therefore affirm the district court's judgment.

AFFIRMED.

STEPHAN, J., not participating.