MARGARET LALLEY, APPELLANT, V. CITY OF OMAHA,
A MUNICIPAL CORPORATION, AND
OMAHA POLICE DEPARTMENT, APPELLEES.

670 N.W.2d 327

Filed October 24, 2003.   No. S-02-966.

Greg Abboud, of Abboud Law Firm, for appellant.

Frederick J. Coffman, Special Projects Attorney, and Thomas O. Mumgaard, Deputy Omaha City Attorney, for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

At the intersection of 30th and Jackson Streets in Omaha, Nebraska, an unknown driver operating a stolen white Nissan Maxima, traveling northbound on 30th Street, ran a stop sign and collided with Margaret Lalley's vehicle, causing both physical injury to Lalley and property damage to her car. The driver of the Nissan fled and was never apprehended by police. Lalley alleged in a tort claim against the City of Omaha (City) and the Omaha Police Department (OPD) that the accident was the result of a vehicular pursuit by police and that she was an innocent third party. Lalley appeals from the summary judgment entered in favor of the City and the OPD.

## SCOPE OF REVIEW

■ In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Big Crow v. City of Rushville, ante* p. 750, 669 N.W.2d 63 (2003).

■ Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Farmland Serv. Co-op v. Southern Hills Ranch, ante* p. 382, 665 N.W.2d 641 (2003).

## FACTS

On July 25, 2000, officers of the OPD were stationed near a residence on South 30th Avenue in Omaha, where an undercover police officer and a confidential informant were to make a purchase of marijuana and methamphetamine from a drug dealer. Gary Kula, an officer with the narcotics unit, was assigned to conduct surveillance of the alley behind the residence. He was driving an unmarked sport utility vehicle that had no emergency lights or sirens. He was accompanied by Kenneth Rowe, an officer who was in uniform.

At one point, Kula received a radio communication indicating that two persons had arrived in the alley behind the residence in a white Nissan. One person remained inside the Nissan, and the

other got out to conduct the transaction. After the Nissan arrived, Kula moved his vehicle into the alley and stopped south of the location of the Nissan. Kula had been instructed that upon receiving notification via police radio that the drug transaction had taken place, he was to proceed through the alley and arrest anyone in the Nissan.

When Kula was advised that the transaction had been completed, he drove north through the alley to attempt to block the white Nissan into its parking stall. However, the Nissan backed out and nearly struck Kula's vehicle. The Nissan then traveled northbound through the alley at a high rate of speed. Kula followed the Nissan as it drove to Mason Street and turned north onto 30th Street. At about that time, Kula received a radio broadcast advising him not to follow the Nissan any farther and instructing him to advise other officers as to the location of the Nissan and its speed.

Kula testified that he accelerated to about 30 miles per hour in the alley, but that he slowed to 5 to 10 miles per hour when turning onto Mason Street. Kula estimated that he accelerated to 30 to 35 miles per hour on Mason Street and again slowed down as he turned the corner at the intersection of 30th and Mason Streets. He returned to a speed of 30 to 35 miles per hour on 30th Street. When he reached the intersection of 30th and Leavenworth Streets, Kula stopped for traffic and lost sight of the Nissan. Kula estimated that the Nissan was traveling down 30th Street at 50 to 70 miles per hour.

Kula stated that it was never his intent to try to stop the Nissan; rather, his orders were to prevent the Nissan from leaving the scene of the drug transaction and to arrest the occupant. Kula stated that the OPD's standard operating procedure provides that unmarked, undercover police vehicles are not to engage in a pursuit unless they are equipped with emergency lights and sirens and that his vehicle was not so equipped. He said he followed the Nissan to maintain sight of it so he could relay the information on the police radio.

Rowe confirmed the statements made by Kula. Rowe testified that he was present in uniform to ensure that the suspect understood that it was police who were approaching to arrest him. Rowe said he and Kula were instructed to stop the Nissan from

leaving the alley and to place the driver under arrest. Kula and Rowe were 125 to 150 feet away from the Nissan when they saw other officers come around to the rear of the residence. Kula and Rowe then saw the reverse lights of the Nissan activate and began to move forward. Rowe stated that as the Nissan backed out, it almost struck the police vehicle, and that Kula swerved to avoid hitting the Nissan. At that time, Kula and Rowe were within 5 to 10 feet of the Nissan, which was the closest they came to the vehicle at any time. By the time the officers reached Mason Street, the Nissan was turning north on 30th Street, after traveling between 40 and 45 miles per hour in the alley. Rowe estimated that Kula was traveling between 25 and 35 miles per hour. According to Rowe, the officers were directed not to pursue the Nissan because they were in an unmarked police vehicle with no lights or sirens. Rowe said they saw the Nissan go through two red lights before they lost sight of it.

Sgt. Mark Langan, the supervising officer for the undercover operation, stated that on the date in question, Kula and Rowe were assigned to wait near the alley in an unmarked vehicle. An undercover officer advised Langan that the suspect had entered the alley as a passenger in a white Nissan. The other officers deployed into the backyard, and Kula and Rowe were then to move up and arrest the occupant of the Nissan. As Langan proceeded to effectuate the arrest of the suspect in the backyard, he observed the Nissan accelerate northbound through the alley at 35 to 40 miles per hour. Langan contacted Kula by radio and directed him not to pursue the Nissan. Langan testified that he gave this order because "[the OPD's] standard operating procedure manual says unmarked cars will not pursue under any circumstances." The driver of the Nissan was never identified or apprehended.

At the intersection of 30th and Jackson Streets, the Nissan collided with a vehicle driven by Lalley, who was traveling eastbound on Jackson Street. Jackson Street is not controlled by traffic signs for eastbound and westbound traffic, and the Nissan failed to stop for a stop sign on 30th Street.

A copy of the OPD's standard operating procedure concerning police vehicle pursuits was admitted into evidence. The document states in relevant part that "[u]nmarked vehicles not equipped with lights and a siren shall not engage in a pursuit."

Lalley sued the City and the OPD, alleging that at the time of the collision, the Nissan was "subject to vehicular pursuit" by the police. The action was filed under the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. § 13-901 et seq. (Reissue 1997 & Cum. Supp. 2000). There is no dispute that Lalley complied with the filing requirements of the act.

Lalley alleged in her petition that as a result of the collision, (1) she incurred hospital, doctor, and medical expenses in the amount of $8,114.51 and would incur additional expenses in the future; (2) she sustained property damage in the amount of $7,575; (3) she lost wages of approximately $8,060; (4) she sustained future permanent loss of earning capacity, permanent vocational and physical disability, and permanent disability to enjoy and live life fully; and (5) she had been caused pain and suffering.

Following a hearing on cross-motions for summary judgment, the district court granted the motion for summary judgment by the City and the OPD, overruled Lalley's motion for summary judgment, and dismissed Lalley's petition with prejudice. The court found that Lalley failed to meet her burden to establish the existence of a vehicular pursuit within the meaning of § 13-911 and that she failed to establish a genuine issue of material fact precluding the entry of summary judgment in favor of the City and the OPD.

Lalley filed a motion to reconsider based on this court's decision in *Meyer v. State*, 264 Neb. 545, 650 N.W.2d 459 (2002), which Lalley alleged had direct application to the issue of proximate cause. The motion was overruled, and Lalley timely filed this appeal.

## ASSIGNMENTS OF ERROR

Lalley's assignments of error, restated, assert that the district court erred (1) in overruling her motion for summary judgment and granting the motion for summary judgment by the City and the OPD, based on the court's finding that a vehicular pursuit did not occur, and (2) in failing to apply *Meyer* and failing to grant Lalley's amended motion for reconsideration.

## ANALYSIS

This case is governed by Nebraska law concerning vehicular pursuits by law enforcement and liability to third parties as the

result of a pursuit. The applicable statute, § 13-911, provides in pertinent part:

> (1) In case of death, injury, or property damage to any innocent third party proximately caused by the action of a law enforcement officer employed by a political subdivision during vehicular pursuit, damages shall be paid to such third party by the political subdivision employing the officer.
>
> . . . .
>
> (5) For purposes of this section, vehicular pursuit means an active attempt by a law enforcement officer operating a motor vehicle to apprehend one or more occupants of another motor vehicle, when the driver of the fleeing vehicle is or should be aware of such attempt and is resisting apprehension by maintaining or increasing his or her speed, ignoring the officer, or attempting to elude the officer while driving at speeds in excess of those reasonable and proper under the conditions.

In its order, the district court noted that § 13-911 sets out three requirements which must be met before a finding can be made that a vehicular pursuit occurred. First, there must be an active attempt by a law enforcement officer to apprehend occupants of another motor vehicle. Second, the driver of the fleeing vehicle must be aware of the attempt to apprehend. Third, the driver must resist apprehension by taking some action, such as speeding, ignoring the officer, or attempting to elude the officer while driving at a speed which is not reasonable under the conditions.

With respect to the second element, the district court noted that because the driver of the Nissan was never apprehended, testimony was not available concerning the driver's knowledge of whether the officers were pursuing him. The court found that the officers (1) were driving an unmarked vehicle, (2) did not use emergency lights or sirens, (3) were ordered by their superior officer not to pursue the fleeing Nissan while they were still positioned in the alley, (4) followed the Nissan at a legal rate of speed in order to maintain visual contact, and (5) kept a considerable distance between their vehicle and the fleeing Nissan during their quest to maintain visual contact. Based on these findings, the court concluded that Lalley had failed to prove that the driver of the Nissan was aware that a police vehicle was following him.

Regarding the third element, the district court found that Lalley had failed to prove that the driver of the Nissan was resisting apprehension. The court concluded the evidence established that the officers were not attempting to apprehend the driver and that the driver was not resisting apprehension.

For these reasons, the district court found as a matter of law that a vehicular pursuit did not occur because Lalley failed to prove two of the three elements necessary to support a finding that a vehicular pursuit had occurred.

The district court properly found as a matter of law that no vehicular pursuit occurred. The testimony of the police officers was undisputed and was consistent in stating that Kula and Rowe did not actively attempt to apprehend the driver of the Nissan. Kula and Rowe were in an unmarked police vehicle, and the OPD's standard operating procedure provides that unmarked vehicles not equipped with lights and a siren shall not engage in a pursuit. The officers followed the Nissan in order to provide information to other officers as to the Nissan's location. It is not reasonable to infer that the officers were actually engaged in a pursuit of the driver of the Nissan.

Kula testified that he was directed to "set up" near the alley behind the residence where the drug transaction was expected to occur. After the deal was completed, Kula's assignment was to proceed into the alley and to arrest anyone in the Nissan. Kula was given a description of the Nissan and was told that one person remained in it while the other person left to complete the drug transaction. After the transaction, Kula began to drive down the alley toward the Nissan. The driver backed out of the parking stall and nearly struck Kula's vehicle. Kula followed the Nissan, which left the alley at a high rate of speed. Kula continued to follow the Nissan through city streets, but he did not actively attempt to apprehend the driver of the Nissan, based on directions received from Langan. Kula stopped for traffic at an intersection and lost sight of the Nissan. Kula stated that he never traveled faster than 30 to 35 miles per hour, while the Nissan was traveling between 50 and 70 miles per hour. Kula stated that it was never his intent to try to stop the Nissan. Rather, he followed the Nissan to maintain sight of it so he could relay the information on the police radio.

Rowe, the uniformed officer who was a passenger in Kula's vehicle, corroborated Kula's testimony concerning their assignment and Kula's actions while following the Nissan. Rowe stated that Kula was driving at 25 to 35 miles per hour in the alley and that the Nissan was traveling at 40 to 45 miles per hour in the alley. Rowe said the officers saw the Nissan go through two red lights before they lost sight of it.

Langan, the supervising sergeant for the operation, saw the Nissan accelerate through the alley at 35 to 40 miles per hour. He contacted Kula on the police radio and directed him not to pursue the Nissan, based on the OPD's standard operating procedure.

None of the evidence supports Lalley's claim that a vehicular pursuit occurred. Therefore, she has failed to establish that law enforcement officers were engaged in an active attempt to apprehend the driver of the Nissan.

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Farmland Serv. Co-op v. Southern Hills Ranch, ante* p. 382, 665 N.W.2d 641 (2003). The district court properly granted the motion for summary judgment filed by the City and the OPD, based on the court's finding as a matter of law that a vehicular pursuit did not take place. Therefore, Lalley's assignment of error concerning the entry of summary judgment and the finding that a vehicular pursuit did not occur is without merit.

Lalley also assigns as error the district court's failure to apply the holding of *Meyer v. State*, 264 Neb. 545, 650 N.W.2d 459 (2002), to her amended motion for reconsideration, which she claims applied to the issue of proximate cause. Lalley argues that the officers' actions were a proximate cause of her damages because the officers attempted to stop the Nissan and then pursued it. "Had the officers in the vehicle not attempted to effectuate the stop, the suspect driver could have snuck out of the alley without drawing attention to him." Brief for appellant at 6.

In *Meyer*, a State Patrol trooper pursued a vehicle that was traveling at more than 90 miles per hour on a state highway. The pursuit continued for 27 miles. The driver of the vehicle passed

through a roadblock at a speed estimated at between 70 and more than 100 miles per hour. When the vehicle reached a town, it collided with two other vehicles, resulting in the death of one driver and injuries to persons in the second vehicle.

On appeal, the estate of the deceased driver argued that the district court erroneously interpreted the proximate cause element of state law to require that the vehicular pursuit be the sole proximate cause of the accident, rather than merely a proximate cause of the accident. This court construed Neb. Rev. Stat. § 81-8,215.01 (Reissue 1994), which is a part of the State Tort Claims Act and the equivalent of § 13-911 in the Political Subdivisions Tort Claims Act. We concluded:

> [T]he plain language of § 81-8,215.01 requires that the actions of a law enforcement officer during a vehicular pursuit be merely a proximate cause of the damage, and not the sole proximate cause. A proximate cause is a cause (1) that produces a result in a natural and continuous sequence and (2) without which the result would not have occurred. . . .
>
> . . . A cause of an injury may be a proximate cause, notwithstanding that it acted through successive instruments of a series of events, if the instruments or events were combined in one continuous chain through which the force of the cause operated to produce the disaster.

*Meyer*, 264 Neb. at 550, 650 N.W.2d at 463.

The *Meyer* case is inapplicable to the case at bar because in *Meyer*, there was no dispute that a vehicular pursuit had taken place. Therefore, the issue was whether the pursuit was a proximate cause of the damages. In the present case, no vehicular pursuit occurred, and it is not necessary to address the proximate cause question. Thus, the district court did not err in failing to grant the motion for reconsideration based on *Meyer*, and Lalley's assignment of error concerning this issue is without merit.

## CONCLUSION

For the reasons set forth herein, the judgment of the district court is affirmed.

AFFIRMED.