HEATHER KEYS AND CHARLES KEYS, INDIVIDUALLY AND AS
WIFE AND HUSBAND, APPELLANTS, V. LANETTE GUTHMANN, M.D.,
AND PHYSICIANS CLINIC, INC., A NEBRASKA CORPORATION
DOING BUSINESS AS PHYSICIANS CLINIC, APPELLEES.

676 N.W.2d 354

Filed March 26, 2004.    No. S-02-471.

Phillip G. Wright and David M. Handley, of Wright & Associates, for appellants.

P. Shawn McCann, of Sodoro, Daly & Sodoro, P.C., and, on brief, Patrick W. Meyer for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

This is a medical malpractice case brought by Heather Keys and Charles Keys (the plaintiffs) against Lanette Guthmann, M.D., and her employer, Physicians Clinic, Inc. (the defendants). The Douglas County District Court granted the defendants' motion for summary judgment, and the plaintiffs have appealed.

## SCOPE OF REVIEW

■ Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Lalley v. City of Omaha*, 266 Neb. 893, 670 N.W.2d 327 (2003).

■ In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *K N Energy v. Village of Ansley*, 266 Neb. 164, 663 N.W.2d 119 (2003).

## FACTS

At all times relevant to this case, Heather was a patient of Guthmann's and Guthmann was a licensed obstetrics and gynecology (OB/GYN) physician employed by Physicians Clinic,

Inc., in Omaha, Nebraska. In their petition, the plaintiffs alleged that on December 12, 1998, Guthmann performed an episiotomy on Heather to aid in the birth of her first child and that while performing the episiotomy, Guthmann cut through Heather's anal sphincter. Complications from this procedure were the basis of the plaintiffs' petition.

According to Guthmann's deposition testimony, the episiotomy did not originally extend to Heather's sphincter, but over the course of the delivery, the incision continued to tear until it reached the sphincter. Guthmann stated that in her experience, it was common for an episiotomy to continue to tear in this manner. In describing her subsequent repair of the torn sphincter, Guthmann said that it "pulled together nicely."

On December 22, 1998, Heather telephoned Guthmann's office and complained of having problems controlling her bowels. Guthmann's records indicate that Heather preferred not to come into the clinic for an examination and chose to allow the injured area time to heal.

At her 6-week postpartum visit, Heather complained of having problems with bowel movements and incontinence with gas. A rectal examination indicated a possible separation of the sphincter, which led Guthmann to believe that the sphincter had not healed well and that Heather might need surgery to correct the problem. Guthmann scheduled an appointment for Heather with Garnet Blatchford, M.D., a colon and rectal surgeon.

Blatchford's examination of Heather revealed that Heather had suffered a sphincter injury as the result of an obstetric delivery. In Blatchford's deposition, she stated that this type of trauma was fairly common. She stated that in most cases, it is not the episiotomy that causes the sphincter injury, but, rather, a tear that occurs in the line of the episiotomy. Blatchford opined that a doctor is unable to visually distinguish between an injury directly caused by an episiotomy and one caused by subsequent tearing. She described Heather's sphincter as healed, but in a gapped position. Blatchford further stated that she had no complaints with the way Guthmann had sutured the laceration.

On March 15, 1999, Blatchford performed a sphincteroplasty on Heather. A followup visit on April 7 showed the injury to be 98 percent healed. After this visit, Blatchford wrote to Guthmann and

stated that Heather was no longer having problems controlling her bowels but was still having some incontinence with gas. Blatchford suggested that Heather perform some Kegel exercises and that she schedule another appointment in 1 month. The last contact Blatchford had with Heather was a telephone call on April 19. Blatchford released Heather to return to work on April 26.

In their petition, the plaintiffs alleged that as a result of the injury to Heather's sphincter, she has suffered permanent injury and special damages due to the need to repair the sphincter. The plaintiffs claimed that Guthmann's negligence was the proximate cause of Heather's injuries. In particular, they asserted that Guthmann was negligent in (1) not properly performing the episiotomy, by failing to perform a posterolateral incision in a proper manner, and not properly repairing the damaged sphincter and (2) failing to perform proper postpartum followup with respect to the damaged sphincter.

The defendants' answer alleged that all of the procedures performed upon Heather were performed in compliance with the applicable standard of care for practicing OB/GYN physicians in Omaha or similar communities. The defendants denied that Guthmann caused any injury to Heather.

The defendants subsequently moved for summary judgment, which motion was sustained by the district court. The court found that the affidavits of Guthmann and Raymond Schulte, M.D., a board-certified OB/GYN physician, presented a prima facie case of lack of negligence. The court stated that the burden then shifted to the plaintiffs to show that an issue of material fact existed which prevented judgment as a matter of law. The court concluded that Heather's affidavit did not qualify as expert testimony and that because no expert testimony was presented by the plaintiffs with regard to the applicable standard of care and causation, the defendants were entitled to judgment as a matter of law. The plaintiffs filed a timely notice of appeal.

## ASSIGNMENTS OF ERROR

The plaintiffs assign the following restated errors to the district court: (1) its failure to find that the injuries sustained by Heather were of a type wherein negligence may be implied and (2) its failure to recognize that material issues of fact precluded the entry of summary judgment.

## ANALYSIS

In order to prevail in a negligence action, a plaintiff must establish the defendant's duty to protect the plaintiff from injury, a failure to discharge that duty, and damages proximately caused by the failure to discharge that duty. *Stahlecker v. Ford Motor Co.*, 266 Neb. 601, 667 N.W.2d 244 (2003). In *Casey v. Levine*, 261 Neb. 1, 621 N.W.2d 482 (2001), we stated that in a malpractice action involving professional negligence, the burden is on the plaintiff to show: (1) the generally recognized medical standard of care, (2) a deviation from that standard by the defendant, and (3) that the deviation was the proximate cause of the plaintiff's alleged injuries. Ordinarily, in a medical malpractice case, the plaintiff must prove the physician's negligence by expert testimony. *Walls v. Shreck*, 265 Neb. 683, 658 N.W.2d 686 (2003).

The plaintiffs argue that Heather's injury was of a type that did not require expert testimony concerning negligence, thus implicating the doctrine of res ipsa loquitur. In *Chism v. Campbell*, 250 Neb. 921, 553 N.W.2d 741 (1996), we stated that in medical malpractice cases brought under the res ipsa loquitur doctrine, negligence may be inferred in three situations without affirmative proof: (1) when the act causing the injury is so palpably negligent that it may be inferred as a matter of law, i.e., leaving foreign objects, sponges, scissors, et cetera, in the body, or amputation of a wrong member; (2) when the general experience and observation of mankind teaches that the result would not be expected without negligence; and (3) when proof by experts in an esoteric field creates an inference that negligence caused the injuries. The plaintiffs assert that the circumstances of this case fit into the second category, which is often referred to as the "common knowledge exception."

Generally, the common knowledge exception is applicable in cases where a physician fails to remove a foreign object from a patient's body or where a patient enters the hospital for treatment on one part of the body and sustains injury to another part of the body. *Fossett v. Board of Regents*, 258 Neb. 703, 605 N.W.2d 465 (2000). As we noted in *Swierczek v. Lynch*, 237 Neb. 469, 478, 466 N.W.2d 512, 518 (1991), "It is within the common knowledge and experience of a layperson to determine

that an individual does not enter the hospital for extraction of her teeth and come out with an injury to nerves in her arms and hands, without some type of negligence occurring."

In *Swierczek*, the plaintiff requested the extraction of all her teeth. After her oral surgery, the plaintiff discovered she had suffered injury to the nerves of her hands and fingers. As such, the plaintiff's injury was to a part of her body for which she had not sought medical treatment, and we held that the common knowledge exception applied.

■ However, in *Fossett*, we stated that the common knowledge exception does not apply where the defendant physician's negligence is not obvious from the facts and circumstances of the case. In *Hanzlik v. Paustian*, 211 Neb. 322, 318 N.W.2d 712 (1982), *disapproved on other grounds, Anderson v. Service Merchandise Co.*, 240 Neb. 873, 485 N.W.2d 170 (1992), the plaintiff sued her physician because her esophagus was perforated during a dilation procedure. The plaintiff developed pneumonia and required major surgery. We held that in such a situation, negligence could not be presumed by application of the common knowledge exception.

In the case at bar, the injury was related to the performance of an episiotomy during the delivery of a child. The facts presented do not support application of the common knowledge exception to the requirement of expert testimony to establish a physician's negligence. Giving Heather all reasonable inferences, negligence could not be inferred as a matter of law.

■ Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Lalley v. City of Omaha*, 266 Neb. 893, 670 N.W.2d 327 (2003). A prima facie case for summary judgment is shown by producing enough evidence to demonstrate that the movant is entitled to a judgment in its favor if the evidence were uncontroverted at trial. *Herrera v. Fleming Cos.*, 265 Neb. 118, 655 N.W.2d 378 (2003). At that point, the burden of producing evidence shifts to the party opposing the motion. *Id.*

■ An affidavit of the defendant physician in a malpractice case, which affidavit states that the defendant did not breach the

appropriate standard of care, presents a prima facie case of lack of negligence for the purposes of summary judgment. *Wagner v. Pope*, 247 Neb. 951, 531 N.W.2d 234 (1995). The burden then shifts to the plaintiff to show that an issue of material fact exists and that that fact prevents judgment as a matter of law. *Id.*

Both Guthmann and Blatchford opined that continued tearing after the performance of an episiotomy was a common occurrence. Schulte stated that he was familiar with the requisite standard of care for OB/GYN physicians and that his review of the circumstances showed that Guthmann acted at or above this standard in her treatment of Heather. This evidence established a prima facie case for lack of negligence on the part of Guthmann. Accordingly, the burden of producing evidence shifted to the plaintiffs to show that an issue of material fact existed which prevented a judgment in favor of the defendants as a matter of law.

Since none of the res ipsa loquitur exceptions apply, the plaintiffs were then required to produce expert testimony establishing the negligence of Guthmann. This would include evidence as to the generally recognized standard of care, Guthmann's deviation from this standard, and that the deviation was a proximate cause of Heather's injuries.

Next, we must address whether the plaintiffs sustained their burden of proof. Heather's affidavit averred that Guthmann made two admissions to her during the course of her treatment. Heather alleged that Guthmann told her that she was being referred to Blatchford because " 'I didn't do the repair right.' " Heather also alleged that when referring to Heather's sphincter injury, Guthmann stated: " 'Once every ten years isn't too bad.' "

These statements are analogous to a statement made by a physician in *Fossett v. Board of Regents*, 258 Neb. 703, 605 N.W.2d 465 (2000). There, when asked why he did not remove some fluid during a certain procedure, the physician replied, " 'I don't know why I left it there, I just left it there.' " *Id.* at 710-11, 605 N.W.2d at 470. We concluded that such statement did not create a reasonable inference of negligence and that a mistake is not synonymous with negligence.

We conclude that Guthmann's alleged admissions do not create a reasonable inference of negligence. The statements by Guthmann and all reasonable inferences therefrom do not sustain

the plaintiffs' burden to show the generally recognized standard of medical care and that the defendants deviated from that standard. Thus, the plaintiffs have not shown by expert testimony that the defendants were negligent.

The plaintiffs argue that even if Heather's injury is of the type that requires expert medical testimony, there are material questions of fact that preclude summary judgment for the defendants. We disagree. Guthmann set forth a prima facie case of lack of negligence. The burden then shifted to the plaintiffs to establish an issue of material fact that would prevent a judgment in favor of Guthmann as a matter of law. The plaintiffs failed to sustain this burden. As such, there is no genuine issue as to any material fact, and the defendants were entitled to judgment as a matter of law.

## CONCLUSION

For the reasons set forth herein, the order of the Douglas County District Court granting summary judgment to the defendants is affirmed.

AFFIRMED.