Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/14/2018 09:08 AM CDT

- 154 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
APKAN v. LIFE CARE CENTERS OF AMERICA
Cite as 26 Neb. App. 154

David Apkan, Special Administrator of the Estate
of Musa Gwelo, appellant, v. Life Care Centers
of America, Inc., and Consolidated Resources
Health Care Fund I, L.P., doing business as
Life Care Center at Elkhorn, appellees.

___ N.W.2d ___

Filed August 7, 2018.     No. A-17-162.

1. **Appeal and Error.** In the absence of plain error, an appellate court con-
   siders only claimed errors that are both assigned and discussed.
2. **Summary Judgment.** Summary judgment is proper when the pleadings
   and evidence admitted at the hearing disclose that there is no genuine
   issue as to any material fact or as to the ultimate inferences that may be
   drawn from those facts and that the moving party is entitled to judgment
   as a matter of law.
3. **Summary Judgment: Appeal and Error.** In reviewing a summary
   judgment, an appellate court views the evidence in the light most
   favorable to the party against whom the judgment is granted and gives
   that party the benefit of all reasonable inferences deducible from
   the evidence.
4. **Trial: Expert Witnesses: Appeal and Error.** Generally, an appellate
   court will reverse a trial court's decision to receive or exclude the other-
   wise relevant testimony of an expert only when there has been an abuse
   of discretion.
5. **Judgments: Words and Phrases.** An abuse of discretion occurs when a
   trial court's decision is based upon reasons that are untenable or unrea-
   sonable or if its action is clearly against justice or conscience, reason,
   and evidence.
6. **Summary Judgment: Affidavits.** Supporting affidavits in summary
   judgment proceedings shall be made on personal knowledge, shall set
   forth such facts as would be admissible in evidence, and shall show
   affirmatively that the affiant is competent to testify to the matters
   stated therein.

- 155 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
APKAN v. LIFE CARE CENTERS OF AMERICA
Cite as 26 Neb. App. 154

7. **Malpractice: Health Care Providers: Statutes.** Because of the statutory difference between skilled nursing facilities and assisted living facilities, they have differing standards of care.

8. **Expert Witnesses.** An expert's opinion is ordinarily admissible if the witness (1) qualifies as an expert, (2) has an opinion that will assist the trier of fact, (3) states his or her opinion, and (4) is prepared to disclose the basis of that opinion on cross-examination.

9. **Negligence: Summary Judgment: Proof.** For the court to grant summary judgment to the defendant in a negligence action, the defendant need only prove that there is no issue of material fact as to one of the elements such that the defendant is entitled to judgment as a matter of law.

10. **Expert Witnesses.** When the character of an alleged injury is subjective rather than objective, a plaintiff must establish the cause and extent of the injury through expert medical testimony.

11. **Negligence: Malpractice: Expert Witnesses.** The common-knowledge exception to the requirement for expert medical testimony applies where the causal link between the defendant's negligence and the plaintiff's injuries is sufficiently obvious to laypersons that a court can infer causation as a matter of law.

12. **Negligence: Proof.** To prevail in any negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and resulting damages.

13. **Summary Judgment: Proof.** The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law.

14. ____: ____. A prima facie case for summary judgment is shown by producing enough evidence to demonstrate that the movant is entitled to a judgment in its favor if the evidence were uncontroverted at trial.

15. ____: ____. After the moving party has shown facts entitling it to a judgment as a matter of law, the opposing party has the burden to present evidence showing an issue of material fact that prevents judgment for the moving party.

16. **Trial: Evidence: Proximate Cause.** Speculation and conjecture are not sufficient to establish causation.

Appeal from the District Court for Douglas County: James T. Gleason, Judge. Affirmed.

Richard F. Hitz, of Law Office of Rich Hitz, for appellant.

Mark E. Novotny and Cathy S. Trent-Vilim, of Lamson, Dugan & Murray, L.L.P., for appellees.

Moore, Chief Judge, and Pirtle and Arterburn, Judges.

Moore, Chief Judge.

## I. INTRODUCTION

David Apkan, special administrator of the estate of Musa Gwelo, brought an action against Life Care Centers of America, Inc., and Consolidated Resources Health Care Fund I, L.P., doing business as Life Care Center at Elkhorn (collectively Life Care), asserting Life Care's negligence caused Gwelo pain and suffering and led to her subsequent death. Apkan appeals the order of the district court for Douglas County, which granted summary judgment in favor of Life Care. On appeal, Apkan challenges the district court's admission of two affidavits over his objection. He further assigns the district court erred in failing to apply the "common-knowledge exception" to the requirement of expert testimony to prove causation. For the reasons set forth below, we affirm.

## II. BACKGROUND

Apkan filed a complaint on June 17, 2014. He alleged that Gwelo was a resident of Life Care's nursing home in Elkhorn, Nebraska, from July 6 to 9, 2012, and that Life Care breached its duty to care for Gwelo, resulting in Gwelo's falling from her bed and suffering injury and in her subsequent death on July 12. The complaint set forth a negligence claim for Gwelo's pain and suffering prior to her death and for her wrongful death.

In its answer, Life Care admitted that Gwelo was its resident during the alleged time period, that it is skilled in the performance of nursing, and that it is properly staffed and licensed by the Department of Health and Human Services as alleged in Apkan's complaint. In all other respects, it denied the allegations of Apkan's complaint.

- 157 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
APKAN v. LIFE CARE CENTERS OF AMERICA
Cite as 26 Neb. App. 154

Life Care filed a motion for summary judgment, alleging that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. On August 19, 2016, the court heard arguments on the summary judgment motion. In support of its motion, Life Care offered the affidavits of Kirk Sweeney and Dr. Donald R. Frey, which the court received into evidence over Apkan's foundational objection.

Sweeney's affidavit stated that he was the director of Life Care's Elkhorn facility at all times relevant to Apkan's complaint. His affidavit included the following statements: Life Care admitted Gwelo on July 6, 2012, when she was transferred there from a hospital where she had been for several weeks. Gwelo was admitted to Life Care with several medical diagnoses, including multiple myeloma, bacteremia, chronic pain, osteoporosis, thrombocytopenia, anemia, tachycardia, and depressive disorder. Gwelo requested "Do Not Resuscitate" status at the time of her admission and completed the appropriate forms. Around 5 p.m. on July 6, a nurse checked on Gwelo, finding her on the floor on her left side "in a fetal position." Life Care was not aware of anyone who witnessed how Gwelo got from her bed to the floor. On July 9, Gwelo was transported to a cancer center for treatment, was readmitted to the hospital that day, and did not return to Life Care. Gwelo died on July 12. Her death certificate lists multiple myeloma as her immediate cause of death. A copy of her "Do Not Resuscitate" form and her death certificate were attached to Sweeney's affidavit.

Dr. Frey's affidavit and attached curriculum vitae stated that he is a medical doctor specializing in family medicine in Omaha, Nebraska. Frey outlined his educational background, his board certification in family and geriatric medicine, and his special qualifications in the area of geriatric medicine. Frey practices at a medical center and a family healthcare facility. He has written peer-reviewed and non-peer-reviewed articles and books about family and geriatric medicine and has given presentations and radio interviews on the same. Frey's affidavit

- 158 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
APKAN v. LIFE CARE CENTERS OF AMERICA
Cite as 26 Neb. App. 154

included the following statements: Frey has regularly seen and cared for residents, like Gwelo, who reside in assisted living facilities, like Life Care. Based on his education, training, and experience, he is familiar with the generally recognized standard of care for assisted living facilities and healthcare providers working in assisted living facilities. He reviewed Apkan's complaint and "hundreds, if not more than a thousand," pages of medical records related to Gwelo's medical condition and treatment prior to her death.

Gwelo was 51 years old at the time of her death. Her official cause of death was multiple myeloma, a cancer of the blood, with which she was first diagnosed in October 2004. When the hospital discharged Gwelo to Life Care, her medical providers recommended she either be placed in hospice care or be moved to a nursing home. In addition to her multiple myeloma, Gwelo was being treated for a sepsis infection of her "port (used to provide chemotherapy treatments)." She also suffered from pancytopenia, secondary to her multiple myeloma, which required frequent blood transfusions; acute respiratory failure; congestive heart failure; hypokalemia (low potassium); malnutrition; headaches; and various other medical conditions. At the time of her admission to Life Care, Gwelo's prognosis was poor and she appeared extremely weak. Gwelo had no history of falls prior to her admission to Life Care.

In the early evening of July 6, 2012, only hours after her admission to Life Care, a nurse found Gwelo "lying on the floor in a fetal position." But no one reported observing or witnessing how she got from her bed to the floor. The records from Life Care reflect that its staff followed all appropriate precautions regarding falls. In addition, based on a review of the records, "little evidence" suggests Gwelo actually fell out of her bed, other than the allegations in Apkan's complaint. Gwelo suffered from low platelets, which posed a risk of her passing out and falling. Although the hospital noted some bleeding on Gwelo's brain on July 9, her low platelets may

- 159 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
APKAN v. LIFE CARE CENTERS OF AMERICA
Cite as 26 Neb. App. 154

have caused a spontaneous bleed. Based on Dr. Frey's review of the evidence and information in the case, his credentials, and his knowledge of the applicable standard of care, he opined to a reasonable degree of medical certainty that Life Care at all times met the applicable standard of care and that the alleged actions or inactions of Life Care did not cause Gwelo's death, alleged damages, or both.

In response to Life Care's motion, Apkan submitted his own affidavit, which the court received into evidence. Apkan stated he was Gwelo's longtime companion for over 12 years. At 11:48 p.m. on July 6, 2012, a staff member at Life Care contacted him, saying Gwelo had fallen to the floor. The staff member explained that Gwelo was examined after the fall, returned to her bed, and would be monitored for the rest of the night. Apkan immediately drove to Life Care in Elkhorn. When he arrived at Gwelo's room, he found her lying on the floor, motionless, in a soiled nightgown. Apkan looked for help but could find no staff members in the hallway or near Gwelo's room. Apkan lifted Gwelo and placed her on her bed, noticing the bed linens were also soiled with feces and urine. Apkan alerted Life Care's staff to her situation. He returned to Gwelo's room where he waited 30 minutes for a staff member to check on her. The staff member told Apkan that Gwelo was "'all right,'" and Apkan left when he felt Gwelo was safe and asleep.

Apkan returned to Life Care each day until Gwelo left the facility on July 9, 2012. Apkan did not recall nursing staff conducting any medical tests or evaluating Gwelo's thinking or neurological status while he was visiting. During his visits, Gwelo complained of a severe headache, which Life Care's staff acknowledged. They occasionally provided her with pain medication. Apkan was not aware of whether Life Care informed Gwelo's physician of her falls or her subsequent headache complaints. Gwelo had an outpatient appointment on July 9. Upon Gwelo's arrival at the clinic, the nursing staff concluded her condition was not stable, and she was

- 160 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
APKAN v. LIFE CARE CENTERS OF AMERICA
Cite as 26 Neb. App. 154

transferred to a hospital emergency room. At the emergency room, Apkan informed the doctors of Gwelo's falls and headaches. The hospital staff informed him that Gwelo suffered from two subdural hematomas on her brain that were actively bleeding and could not be surgically treated due to her platelet deficiency. Due to the hematomas, her cancer treatments were suspended, and she died on July 12.

The court granted the parties leave to submit briefs and took the matter under advisement. On January 11, 2017, the court entered an order on Life Care's motion for summary judgment. The court found that Dr. Frey's affidavit established that Life Care met the applicable standard of care. The court noted, "Implicit in this is the determination that if the actions of [Life Care] in treating [Gwelo] comported with the applicable standard of care, the actions of [Life Care] could not have been a proximate cause of any damage suffered by [Gwelo]." Because Apkan failed to provide contrary evidence on the issue of causation, the court granted Life Care's motion for summary judgment. The court further found that Apkan could not proceed under the common-knowledge exception to the requirement for expert testimony to prove causation because the evidence did not support a determination that Life Care's conduct was extreme and obvious misconduct. Apkan appeals.

### III. ASSIGNMENTS OF ERROR

Apkan assigns, restated, that the district court erred in (1) overruling his objections to Life Care's affidavits in support of summary judgment, (2) finding that Dr. Frey's affidavit provided evidence that Life Care met the applicable standard of care, (3) finding that the common-knowledge exception did not apply, and (4) entering summary judgment in favor of Life Care.

[1] As addressed by Life Care in its appellate brief, Apkan does not specifically argue his assignment of error regarding Sweeney's affidavit. In the absence of plain error, an appellate court considers only claimed errors that are both assigned and

- 161 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
APKAN v. LIFE CARE CENTERS OF AMERICA
Cite as 26 Neb. App. 154

discussed. *Salem Grain Co. v. Consolidated Grain & Barge Co.*, 297 Neb. 682, 900 N.W.2d 909 (2017).

## IV. STANDARD OF REVIEW

[2,3] Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Oldfield v. Nebraska Machinery Co.*, 296 Neb. 469, 894 N.W.2d 278 (2017). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Walters v. Sporer*, 298 Neb. 536, 905 N.W.2d 70 (2017).

[4,5] Generally, an appellate court will reverse a trial court's decision to receive or exclude the otherwise relevant testimony of an expert only when there has been an abuse of discretion. See *Cohan v. Medical Imaging Consultants*, 297 Neb. 111, 900 N.W.2d 732 (2017). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *ACI Worldwide Corp. v. Baldwin Hackett & Meeks*, 296 Neb. 818, 896 N.W.2d 156 (2017).

## V. ANALYSIS

In essence, Apkan's appeal assigns that because the court erred in admitting the affidavits of Sweeney and Dr. Frey, it also erred in granting Life Care's motion for summary judgment. As discussed below, the district court properly admitted both affidavits into evidence. While Dr. Frey's expert opinion applied the incorrect standard of care, he also found Life Care's action or inaction did not cause Gwelo's death or damages. As a result, we find that Life Care has made a

- 162 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
APKAN v. LIFE CARE CENTERS OF AMERICA
Cite as 26 Neb. App. 154

prima facie case for summary judgment to which Apkan did not respond with contradictory evidence. More, the cause of Gwelo's death was not obvious to the layperson such that Apkan did not need to support his allegations with expert testimony. Therefore, we affirm the decision of the district court.

### 1. Affidavit of Sweeney

[6] Apkan assigns as error, but does not argue, that the district court erred in admitting Sweeney's affidavit into evidence. Therefore, we review the court's decision for plain error. See *Salem Grain Co. v. Consolidated Grain & Barge Co., supra.* Under Neb. Rev. Stat. § 25-1334 (Reissue 2016), supporting affidavits in summary judgment proceedings shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. See *Green v. Box Butte General Hosp.*, 284 Neb. 243, 818 N.W.2d 589 (2012).

Life Care submitted Sweeney's affidavit, which stated that he was the director of the Life Care's Elkhorn facility and that his affidavit was based on his personal knowledge. On our review for plain error, we find Sweeney had sufficient personal knowledge, his affidavit set forth facts that would be admissible in evidence, and he was competent to testify to the matters stated in his affidavit. The district court did not abuse its discretion in entering it into evidence.

### 2. Affidavit of Dr. Frey

Apkan assigns that the district court erred in admitting Dr. Frey's affidavit into evidence. He argues that Dr. Frey's affidavit does not apply the appropriate standard of care in determining whether Life Care was negligent, because his affidavit applies the standard of care for "assisted living facilit[ies]" while the parties agreed that Life Care is a "skilled nursing facility." Apkan argues that because assisted living facilities

- 163 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
APKAN v. LIFE CARE CENTERS OF AMERICA
Cite as 26 Neb. App. 154

and skilled nursing facilities require a different standard of care, Dr. Frey's opinion as to whether Life Care's conduct met the required standard of care is irrelevant. In response, Life Care argues that Dr. Frey's references to the standard of care for assisted living facilities was a scrivener's error that did not affect the standard of care he applied. An examination of the statutory differences between skilled nursing facilities and assisted living facilities is useful to our determination of the appropriate standard of care in this case.

(a) Standards of Care

Under Nebraska law, skilled nursing facilities provide a higher level of care than assisted living facilities. Neb. Rev. Stat. § 71-429 (Reissue 2009) defines a skilled nursing facility as "a facility where medical care, skilled nursing care, rehabilitation, or related services and associated treatment are provided for a period of more than twenty-four consecutive hours to persons residing at such facility who are ill, injured, or disabled." The Nebraska Nursing Home Act regulates these facilities. See Neb. Rev. Stat. §§ 71-6008 to 71-6037 (Reissue 2009). With some exceptions, skilled nursing facilities must maintain a licensed registered nurse for at least 8 consecutive hours every day and must always have a licensed registered nurse or licensed practical nurse on duty. § 71-6018.01(1). The Nebraska Nursing Home Act does not place restrictions on the types of patients a skilled nursing facility may admit based on their needs.

By contrast, Neb. Rev. Stat. § 71-5904 (Reissue 2009), at the time relevant to this appeal, intended assisted living facilities to promote "resident self-direction and participation in decisions which emphasize independence, individuality, privacy, dignity, and residential surroundings." According to Neb. Rev. Stat. § 71-5905 (Reissue 2009), assisted living facilities are unable to admit certain patients based on the level of care they require and, at the time relevant to this appeal, provided:

- 164 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
APKAN v. LIFE CARE CENTERS OF AMERICA
Cite as 26 Neb. App. 154

(1) An assisted-living facility shall not admit or retain a resident who requires complex nursing interventions or whose condition is not stable or predictable unless:

. . . .

(b) The resident or his or her authorized representative agrees to arrange for the care of the resident through appropriate private duty personnel, a licensed home health agency, or a licensed hospice[.]

[7] Based on the statutory differences between skilled nursing facilities and assisted living facilities, we conclude they have differing standards of care. Dr. Frey applied the standard of care for assisted living facilities rather than the standard of care for skilled nursing facilities such as Life Care. We cannot dismiss Dr. Frey's assessment of Life Care based on the standard of care applicable to assisted living facilities as a mere scrivener's error. Even if, as Life Care alleges, Dr. Frey's curriculum vitae demonstrates that he was qualified to provide an expert opinion as to the standard of care for skilled nursing facilities, his failure to explicitly do so makes his opinion as to whether Life Care met the applicable standard of care irrelevant. See *Green v. Box Butte General Hosp.*, 284 Neb. 243, 818 N.W.2d 589 (2012).

But Dr. Frey also opined in his affidavit that the alleged actions or inactions of Life Care did not cause Gwelo's death or alleged damages. We find the district court properly admitted the portions of the affidavit describing the element of causation, which we discuss below.

### (b) Causation

Regardless of the relevance of Dr. Frey's affidavit as to the standard of care, it provides uncontroverted evidence that Life Care's actions or inactions did not cause Gwelo's death or alleged damages. Because Dr. Frey's affidavit and curriculum vitae establish his credentials to evaluate cause of injuries and death, we find the district court did not err in finding sufficient foundation for the affidavit under § 25-1334 and admitting it into evidence.

- 165 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
APKAN v. LIFE CARE CENTERS OF AMERICA
Cite as 26 Neb. App. 154

[8] An expert's opinion is ordinarily admissible under Neb. Rev. Stat. § 27-702 (Reissue 2016) if the witness (1) qualifies as an expert, (2) has an opinion that will assist the trier of fact, (3) states his or her opinion, and (4) is prepared to disclose the basis of that opinion on cross-examination. *ACI Worldwide Corp. v. Baldwin Hackett & Meeks*, 296 Neb. 818, 896 N.W.2d 156 (2017). Dr. Frey's affidavit clearly establishes his credentials that qualify him as an expert. In it, Dr. Frey stated his opinion about the cause of Gwelo's death and damages and set forth the basis for that opinion.

Apkan insists the district court should have disregarded Dr. Frey's entire expert opinion based on his application of the inappropriate standard of care. He bases this argument on *Green v. Box Butte General Hosp., supra*. In *Green*, a rural hospital admitted a paraplegic patient who, during his unassisted attempt to move from his wheelchair to a shower chair, fell and injured his left shoulder. The patient filed suit against the hospital, alleging that the hospital's negligence caused his left shoulder injury. A professor of nursing gave deposition testimony in which she opined that the hospital violated the standard of care in its treatment of the patient. But she did not claim to be familiar with the standard of care for rural hospitals. The patient moved for partial summary judgment on the issues of negligence and causation, which the district court granted. On appeal, the Nebraska Supreme Court found the district court erred in granting the patient's motion of summary judgment because the professor did not testify about the standard of care applicable to nurses in rural hospitals. *Id.*

The present case is distinguishable from *Green*. Although Dr. Frey did not provide the appropriate standard of care, he did provide an opinion about the cause of Gwelo's death and damages. Based on the credentials listed in Dr. Frey's curriculum vitae, the district court found he was qualified to provide expert testimony about causation. Although Apkan provided sufficient foundational reasons to disregard Dr. Frey's opinion

- 166 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
APKAN v. LIFE CARE CENTERS OF AMERICA
Cite as 26 Neb. App. 154

about whether Life Care met the applicable standard of care, he provides no reason to disregard the contents of the remainder of Dr. Frey's affidavit regarding causation.

[9] Further in *Green*, the plaintiff filed the motion for summary judgment. For the court to grant his motion, he was required to prove all elements of a negligence case: a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and resulting damages. See *id*. Here, the defendant, Life Care, moved for summary judgment. For the court to grant summary judgment to the defendant in a negligence action, the defendant need only prove that there is no issue of material fact as to one of the elements such that the defendant is entitled to judgment as a matter of law. See, e.g., *McReynolds v. RIU Resorts and Hotels*, 293 Neb. 345, 880 N.W.2d 43 (2016) (finding hotel guest's negligence claim precluded due to absence of hotel's duty to guest); *Latzel v. Bartek*, 288 Neb. 1, 846 N.W.2d 153 (2014) (finding summary judgment in favor of defendant was appropriate because intervening cause eliminated element of causation from plaintiff's negligence action).

Dr. Frey's affidavit and attached curriculum vitae establish that he is qualified to assess the cause of Gwelo's alleged damages (i.e., her alleged pain and suffering) and subsequent death. We find, therefore, that the district court did not abuse its discretion in admitting Dr. Frey's affidavit into evidence at the hearing on Life Care's motion for summary judgment.

### 3. COMMON-KNOWLEDGE EXCEPTION DOES NOT APPLY

[10,11] Apkan assigns that the district court erred in finding Life Care's negligence was not so palpable that a layperson could recognize it without expert proof. When the character of an alleged injury is subjective rather than objective, a plaintiff must establish the cause and extent of the injury through expert medical testimony. *Lewison v. Renner*, 298 Neb. 654, 905 N.W.2d 540 (2018). But the common-knowledge exception,

- 167 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
APKAN v. LIFE CARE CENTERS OF AMERICA
Cite as 26 Neb. App. 154

which stems from the doctrine of res ipsa loquitur, applies where the causal link between the defendant's negligence and the plaintiff's injuries is sufficiently obvious to laypersons that a court can infer causation as a matter of law. See, *Thone v. Regional West Med. Ctr.*, 275 Neb. 238, 745 N.W.2d 898 (2008); *Keys v. Guthmann*, 267 Neb. 649, 676 N.W.2d 354 (2004).

After our review of the record, we find the district court did not abuse its discretion in finding that the common-knowledge exception does not apply. Gwelo suffered from multiple myeloma for 8 years prior to her stay in Life Care's facilities. The record shows that the disease had taken a dramatic toll on her well-being at the time Life Care admitted her, and by all accounts, she was nearing the end of her life. As Dr. Frey's affidavit outlined, Gwelo arrived at Life Care with many different health problems. No witnesses could identify how Gwelo came to be found on the floor or to show that she actually fell from her bed. Dr. Frey noted that Gwelo suffered from low platelets, which may have caused the brain bleed the hospital found after Gwelo left Life Care. Given this evidence, the district court did not abuse its discretion in finding that Life Care's conduct did not obviously cause Gwelo's death or damages such that a layperson could identify it without the assistance of expert testimony.

### 4. SUMMARY JUDGMENT

[12] Apkan assigns that the district court erred in granting Life Care's motion for summary judgment. To prevail in any negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and resulting damages. *Lewison v. Renner, supra*. See, also, *King v. Crowell Memorial Home*, 261 Neb. 177, 622 N.W.2d 588 (2001) (affirming directed verdict for nursing home in negligence action where plaintiff provided no evidence that any actions or inactions of nursing home caused decedent's death).

- 168 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
APKAN v. LIFE CARE CENTERS OF AMERICA
Cite as 26 Neb. App. 154

[13-15] The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. *Bernard v. McDowall, LLC*, 298 Neb. 398, 904 N.W.2d 679 (2017). A prima facie case for summary judgment is shown by producing enough evidence to demonstrate that the movant is entitled to a judgment in its favor if the evidence were uncontroverted at trial. *Id.* After the moving party has shown facts entitling it to a judgment as a matter of law, the opposing party has the burden to present evidence showing an issue of material fact that prevents judgment for the moving party. *Midland Properties v. Wells Fargo*, 296 Neb. 407, 893 N.W.2d 460 (2017).

Life Care, the party moving for summary judgment, provided sufficient evidence through the affidavits of Sweeney and Dr. Frey to establish that Gwelo's alleged injuries and death were not caused by any actions or inactions on the part of Life Care. Apkan adduced no evidence to support his allegation that Gwelo actually fell while in Life Care or how she came to be on the floor. And the record contained no evidence that Gwelo suffered an actual injury while in the Life Care facility. Apkan points to the subdural hematomas noted at the hospital after Gwelo left the facility. But after Dr. Frey's review of Gwelo's extensive medical records, he found that the subdural hematomas noted at the hospital could have resulted from a spontaneous bleed caused by her low platelet count. Apkan did not adduce evidence to contradict Dr. Frey's findings or to establish what caused the subdural hematomas.

Dr. Frey provided an expert medical opinion that Life Care's alleged actions or inactions did not cause Gwelo's death or alleged damages. Gwelo's death certificate stated that her multiple myeloma was her immediate cause of death. Apkan did not adduce evidence to contradict this cause of death.

- 169 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
APKAN v. LIFE CARE CENTERS OF AMERICA
Cite as 26 Neb. App. 154

[16] Life Care sustained its burden to show that no genuine issue of material fact existed as to causation. The burden then shifted to Apkan to prove genuine issues of material fact remained. Apkan failed to do so. Speculation and conjecture are not sufficient to establish causation. *King v. Crowell, supra*.

Without evidence that Life Care's actions or inactions caused Gwelo's injuries and death, the district court could not find Life Care liable in negligence for any resulting damages. Although our analysis differs, in part, from that of the district court in that we do not rely upon Dr. Frey's opinion regarding standard of care, we conclude the district court did not abuse its discretion in granting Life Care's motion for summary judgment, because there is no genuine issue of fact regarding causation.

## VI. CONCLUSION

The district court did not err in admitting Sweeney's affidavit or the affidavit of Dr. Frey as it relates to causation. Nor did the district court err in finding that the common-knowledge doctrine did not apply. We affirm the district court's grant of summary judgment in favor of Life Care, because the evidence was unrebutted that the alleged actions or inactions of Life Care did not cause Gwelo's death or damages.

Affirmed.